**FEDERAL DEPOSIT INSURANCE CORPORATION, As Receiver for Bohemian Savings and Loan Association, Appellant,**

v.

**Donald A. MALMO, Appellee.**

**No. 90–1526.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1990.

Decided July 16, 1991.

Rehearing and Rehearing En Banc Denied Aug. 19, 1991.

Samuel C. Ebling, St. Louis, Mo., Cawood K. Bebout appeared on the brief, for appellant.

Robert A. Useted, St. Louis, Mo., Alan C. Kohn appeared on the brief, for appellee.

Before McMILLIAN and BEAM, Circuit Judges, and ROSENBAUM,* District Judge.

McMILLIAN, Circuit Judge.

The Federal Deposit Insurance Corporation ("FDIC") appeals from a final order

* The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota, sitting by designation.

entered in the United States District Court[1] for the Eastern District of Missouri, dismissing its complaint for lack of personal jurisdiction. *See FDIC v. Malmo*, No. 89–1266–C–5 (E.D.Mo. Mar. 12, 1990) (*FDIC*) (memorandum granting motion to dismiss). On appeal, FDIC argues that the district court erred in granting Donald Malmo's motion to dismiss for lack of personal jurisdiction. For the reasons stated below, we affirm.

In 1983, Duncan Williams Government Securities Corporation ("DWGSC") brokered promissory notes secured by financial guaranty bonds to numerous financial institutions, including Bohemian Savings and Loan Association ("Bohemian"), a financial institution located in St. Louis, Missouri. In addition, DWGSC owned three notes which it had purchased in its own name. In 1984, the makers of the promissory notes defaulted, and Cal–Farm Insurance Company ("Cal–Farm"), the issuer of the financial guaranty bonds, failed to honor its obligation to pay the notes' value to Bohemian and DWGSC. On September 21, 1984, Duncan Williams, a principal of DWGSC, wrote his attorney Donald Malmo ("defendant"), suggesting that defendant bring a lawsuit against Cal–Farm on behalf of DWGSC customers. Defendant is a Tennessee resident, and his law firm does not generally do business in Missouri.

On November 8, 1984, defendant wrote a letter to Bohemian, soliciting its participation in a suit against Cal–Farm. The letter concluded with a "consent paragraph" authorizing defendant and his firm to represent Bohemian. One of Bohemian's vice-presidents executed the consent paragraph. Defendant then negotiated a settlement of DWGSC's claims against Cal–Farm, without informing Bohemian of this transaction. Instead of representing Bohemian himself, defendant contacted Charles Ruben, a California attorney, to represent Bohemian in a California state court action against Cal–Farm, and instructed Ruben not to sue until defendant or DWGSC told him to do so. After employing Ruben, defendant had no contact with Bohemian or with anyone else in Missouri. Defendant also did not instruct Ruben to sue Cal–Farm until after (1) DWGSC had settled with Cal–Farm, and (2) Cal–Farm had been placed under the supervision of the Insurance Commissioner of California, and California authorities had obtained an injunction barring suit against Cal–Farm. Bohemian later suffered financial difficulties, and in 1987 the Federal Savings and Loan Insurance Corporation ("FSLIC") was appointed as Bohemian's receiver. After the FSLIC was abolished, the FDIC was substituted for FSLIC as Bohemian's receiver and as the plaintiff in the present suit.

In 1989, FSLIC filed the present suit against defendant, alleging intentional legal malpractice. Specifically, FSLIC alleged that defendant violated his duty to represent Bohemian zealously by intentionally failing to (1) communicate with Bohemian after the November 8 letter, (2) inform Bohemian of his intent to settle DWGSC's claims against Cal–Farm before raising Bohemian's claims, and (3) sue Cal–Farm before California authorities had barred suits against Cal–Farm.

Defendant then moved to dismiss for lack of personal jurisdiction, on the basis that he lacked "such minimum contacts with the State of Missouri such that maintenance of suit against [defendant] in Missouri would not offend traditional notions of fair play and substantial justice." *See* Fed.R.Civ.P. 12(b)(2). The district court initially noted that the November 8 letter was defendant's only contact with Missouri, because he did not travel to Missouri, have any mail or telephone correspondence with anyone in Missouri regarding Bohemian, and did not bill anyone in Missouri. The district court then granted the motion to dismiss, because "one letter of solicitation,

---

**1.** The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

when it represents the sole contact with the forum state, is insufficient to satisfy the test of sufficient contacts under the fifth amendment due process clause." *See FDIC,* slip op. at 8. This appeal followed.

On appeal, FDIC raises two arguments. First, FDIC argues that the district court erroneously failed to discuss the Missouri long-arm statute. Mo.Rev.Stat. § 506.500 (1986). It is well settled, however, that the Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents "to the extent permissible under the due process clause." *Van Praag v. Columbia Classics Corp.,* 849 F.2d 1106, 1108 (8th Cir.1988) (citations omitted). Thus, the only issue in this case is whether allowing defendant to be sued in Missouri would violate the due process clause's requirement that "the non-resident defendant have certain minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id., citing International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Second, FDIC argues that defendant in fact had the requisite "minimum contacts" with Missouri, because (1) defendant solicited Bohemian's business and (2) the effects of defendant's misconduct (*i.e.,* injury to Bohemian) were intended to, and did, occur in Missouri. For the reasons stated in the district court's well-reasoned opinion, we disagree. *See FDIC,* slip op. at 7–8 (noting that sporadic mail correspondence alone usually does not constitute "minimum contacts").

Accordingly, we affirm the district court's order dismissing the complaint. *See* 8th Cir. R. 47B.

ROSENBAUM, District Judge, dissenting.

I respectfully dissent. It is clear that the law as stated in the majority opinion is accurate, but it is my view that this case is wrongly decided.

It is axiomatic that personal jurisdiction must be founded on minimum contacts with the forum state. Those minimum contacts must be substantial enough that the party could reasonably anticipate being haled into court in the forum state. The question of the sufficiency of contacts, however, turns on the facts and circumstances of each case. *Austad Co. v. Pennie & Edmonds,* 823 F.2d 223, 226 (8th Cir.1987). In my view, the facts and circumstances of this case support the exercise of personal jurisdiction over the defendant.

This is no ordinary vendor-vendee or commercial contractor case. This case involves a lawyer voluntarily soliciting an attorney-client relationship. Defendant, a lawyer, wrote a letter to Bohemian offering ". . . to represent you for the purpose of including you in the suit to collect your notes. . . ." The letter also contained a consent paragraph which, by its terms, authorized defendant to represent Bohemian upon execution.

Defendant drafted the consent paragraph. Bohemian signed it and returned it to the defendant. While the district court characterized this contact as "sporadic mail correspondence," I would suggest that soliciting a client for legal representation is neither a random nor a fortuitous contact. The ongoing relationship which inheres in the attorney-client relationship is exactly the kind of "continuing obligation" contemplated in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985).

From the time that Bohemian accepted defendant's offer of representation, defendant was obliged to represent his client faithfully. In this manner, I believe that defendant's letter indicated a knowing consent to an ongoing relationship with the forum state, such that defendant could reasonably anticipate being haled into court there.

With the above facts in mind, I would find that defendant's actions were sufficient to establish personal jurisdiction. Defendant, by sending the letter, elected to assume the obligations inherent in the attorney-client relationship. Bohemian, by

signing and returning the letter, consented to the future affiliation required to pursue their claim. By these actions, I would find that defendant purposely directed his actions to the forum state [1] and, as a result, should be subject to its jurisdiction. Accordingly, I would reverse the district court's decision.

---

1. In this regard, the facts of this case can be distinguished from the facts in *Austad,* where the plaintiff initiated the contact with the defendant attorney. The *Austad* court specifically noted that the defendant law firm "did not actively seek out Austad as a client." *Austad Co. v. Pennie & Edmonds,* 823 F.2d at 226.