817 F.Supp. 802 (1993)
Lawrence PIPER, et al., Plaintiffs,
v.
Robert L. KASSEL, Defendant.
No. 91-0592C(6).
United States District Court, E.D. Missouri, E.D.
April 2, 1993.
*803 Jean Engstrom Jones, St. Louis, MO, for plaintiffs.
Burton Shostak, Moline, Ottsen, Mauze, Leggat & Shostak, Clayton, MO, for defendant.

MEMORANDUM
GUNN, District Judge.
Plaintiffs' original complaint alleged that defendant Robert L. Kassel violated the Commodity Exchange Act and committed common law fraud and misrepresentation. Jurisdiction was premised on federal question jurisdiction. See 28 U.S.C. § 1331. The Court dismissed the claim brought pursuant to the Commodity Exchange Act and, accordingly, ordered plaintiffs to file an amended complaint articulating a new basis for jurisdiction. 782 F.Supp. 1334. In response to the Court's order, plaintiffs filed their third amended complaint, claiming diversity of citizenship between plaintiffs and defendant with the requisite amount in controversy for each individual plaintiff. Kassel filed these motions to quash service of process, to dismiss for lack of personal jurisdiction, to dismiss *804 for improper venue and to dismiss the third amended complaint.
The Court will address Kassel's motion to dismiss for lack of personal jurisdiction. Kassel is neither a resident nor citizen of Missouri and plaintiffs do not suggest that Kassel has any personal contact with Missouri. Rather, they premise this Court's personal jurisdiction over Kassel on the Missouri contacts of individuals who they contend are Kassel's agents.
The facts as alleged by plaintiffs are that Kassel established National Coal Exchange, Inc. (NCE) for the purpose of engaging in the sale to the general public of contracts for the future delivery of coal by means of misrepresentation and fraud. Plaintiffs offer affidavits stating that Kassel received a portion of the profits of NCE and Tennessee River Coal Company, a company established to supply NCE's long-term coal requirements even though it did not have access to the quantity and quality of coal required by NCE's contracts. Plaintiffs also contend that NCE did not act without Kassel's knowledge and approval.
Employees of corporations other than NCE solicited individuals by telephone to enter into coal contracts with NCE. No other information regarding the relationship between the solicitor's employer and NCE has been provided.
One plaintiff's contract was solicited by several telephone calls to his residence in Missouri. A contract was mailed to his home which he signed and returned to NCE with a payment of $3,733.70. Plaintiffs rely on these Missouri contacts as establishing this Court's personal jurisdiction over Kassel. Plaintiffs repeat throughout their complaint that the contract was sold by Kassel's agent and that Kassel was a co-conspirator with other individuals associated with NCE but who likewise did not have any direct participation in the sale of the coal contracts.
The party seeking to invoke the jurisdiction of a federal court has the burden of establishing that jurisdiction exists. Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 653 n. 3 (8th Cir.1982) (citations omitted). "The Court may rely on pleadings and affidavits alone or require that an evidentiary hearing be held...." Cantrell v. Extradition Corp. of America, 789 F.Supp. 306, 308 (W.D.Mo.1992). When the Court relies on pleadings and affidavits to make its decision on a motion to dismiss for lack of personal jurisdiction, the Court must view the facts in the light most favorable to plaintiff but plaintiff must make a prima facie showing of personal jurisdiction over defendant. Watlow Electric Mfg. Co. v. Patch Rubber Co., 838 F.2d 999, 1000 (8th Cir. 1988).
The personal jurisdiction inquiry involves a two part analysis. The Court first ascertains whether the applicable state long-arm statute confers jurisdiction. Falkirk Mining Co. v. Japan Steel Works, Ltd., 906 F.2d 369, 372 (8th Cir.1990). If it does, then the Court must decide whether the exercise of personal jurisdiction violates the due process clause of the Fourteenth Amendment. Id. at 372-73. "It is well settled, however, that the Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents `to the extent permissible under the due process clause.'" FDIC v. Malmo, 939 F.2d 535, 537 (8th Cir.1991). Thus, in this instance, the Court finds that it can resolve this issue by determining whether subjecting Kassel to suit in Missouri would violate due process.
Plaintiffs have not met their burden of establishing a prima facie showing of personal jurisdiction. They do not assert any action in or affecting Missouri by Kassel or by any direct employee of NCE. Despite the absence of a direct relationship between Kassel and the sale of the coal contract to the Missouri citizen, they allege that the individual who solicited that contract was Kassel's agent. Plaintiffs offer many factual allegations without advancing a legal theory to support their ultimate conclusion.
Even if the Court were to accept plaintiffs' position that these actions can be imputed to Kassel, the Missouri contacts are insufficient to satisfy due process. The due process clause of the Fourteenth Amendment requires that a defendant have such "minimum contacts" with the forum that exercise of *805 jurisdiction over it does not offend "traditional notions of fair play and substantial justice." Siegel-Robert, Inc. v. Armbruster, 670 F.Supp. 274, 275 (E.D.Mo.1987). "The defendant's contacts with the forum must be purposeful and such that it `should reasonably anticipate being haled into court there.'" Id. "In judging minimum contacts a court properly focuses on `the relationship among the defendant, the forum, and the litigation.'" Calder v. Jones, 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984).
The due process standard has developed into a consideration of five factors: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. Sheldon v. S & A Rx, Inc., 683 F.Supp. 1289, 1291 (E.D.Mo.1988). The first three enumerated factors are the most important; the last two factors are of secondary importance and as such are not determinative. Sheldon, 683 F.Supp. at 1291.
In the Eighth Circuit, mail or telephone correspondence between defendant and the forum state is insufficient to satisfy the Fourteenth Amendment's due process requirement. See, e.g., T.J. Raney & Sons, Inc. v. Security Sav. & Loan Assoc., 749 F.2d 523, 525 (8th Cir.1984) ("[T]he use of interstate mail, telephone, or banking facilities, standing alone, was insufficient to satisfy the requirements of due process."); Institutional Food Marketing Assoc., Ltd. v. Golden State Strawberries, 747 F.2d 448, 456 (8th Cir.1984) ("[Defendant's] contacts have been limited to phone conversations and written correspondence with [plaintiffs]. These contacts are not sufficient, under the due process clause, to justify an exercise of personal jurisdiction over the defendant."); Scullin Steel v. National Railway Utilization Corp., 676 F.2d 309, 314 (8th Cir.1982) ("The use of interstate facilities (telephone, the mail) ... are secondary or ancillary factors and cannot alone provide the `minimum contacts' required by due process."); Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 656 (8th Cir.1982) ("Although the parties did make telephone calls, exchange correspondence, and use banks to arrange payment, `the use of arteries of interstate mail, telephone, railway, and banking facilities is insufficient, standing alone, to satisfy due process.'"); Aaron Ferer & Sons Co. v. Atlas Scrap Iron, 558 F.2d 450, 455 (8th Cir.1977) ("[L]etters and telephone calls in this purely commercial setting did not supply the necessary minimal contact."); Warner v. General Insurance Co. of America, 690 F.Supp. 830, 835 (E.D.Mo.1988) ("[Defendants'] contacts with Missouri, consisting of telephone calls and written correspondence to plaintiffs, are insufficient to establish the requisite minimum contacts with Missouri."). These cases are not entirely dispositive in this matter, however, because plaintiffs allege slightly more contact with Missouri. In addition to the telephone solicitation to Missouri, followed by the mailing of a proposed contract to Missouri, the Missouri plaintiff signed the contract in Missouri and returned it by mail accompanied with payment.
Despite these differences, the Court concludes that it lacks personal jurisdiction over Kassel. This action is analogous to FDIC v. Malmo, No. 89-1266-C(6), 1990 WL 485450 (E.D.Mo. Mar. 12, 1990), aff'd, 939 F.2d 535 (8th Cir.1991), in which this district concluded that it does not have personal jurisdiction over a defendant with Missouri contacts somewhat similar to those present in this action. In Malmo, the defendant, an attorney, personally sent one letter to Bohemian Savings and Loan at its principal office in St. Louis, Missouri, soliciting permission to represent it in a consolidated action against an insurance company. FDIC v. Malmo, 939 F.2d 535, 536 (8th Cir.1991). Bohemian's vice-president executed the "consent paragraph," authorizing such representation, and returned it to defendant. Id. Dissatisfied with defendant's representation, the FDIC brought suit on Bohemian's behalf for legal malpractice. The district court concluded that "one letter of solicitation" is not sufficient for due process purposes.[1]Id. at 537. *806 On appeal, the FDIC argued that defendant had the requisite "minimum contacts" with Missouri because he solicited Bohemian's business and the effects of his misconduct were intended to, and did, occur in Missouri. Id. Not finding the FDIC's reasoning persuasive, the Eighth Circuit Court of Appeals affirmed the district court's decision. Id.
The facts of this case are similar to those in Malmo. Here, the contract was executed via the mails and telephonic communications without any representative actually visiting Missouri. The Missouri plaintiff did not instigate the contract but rather was solicited by an individual outside the state. The effects of the alleged fraud perpetrated in the creation of this contract was felt in Missouri. Also, as in Malmo, the document executed in Missouri is integrally related to the underlying action. Accordingly, the Court concludes that the Missouri contacts in this case are insufficient to confer personal jurisdiction over Kassel.
The Court additionally notes that the Missouri plaintiff's contract was for $3,733.70. He seeks $50,000 in punitive damages. The district court should dismiss for lack of jurisdiction when it appears to a "legal certainty" that the plaintiff cannot satisfy the jurisdictional amount. J.E. Allison v. Security Benefit Life Ins. Co., 980 F.2d 1213, 1215 (8th Cir.1992). Punitive damages are included in the amount in controversy. Id.
However, for this plaintiff to satisfy the amount in controversy, he must recover in punitive damages nearly fifteen times his actual compensatory damages. Although this alone may not justify a conclusion that he has not met the amount in controversy,[2] the Court notes that plaintiffs' original complaint sought significantly less in punitive damages. For a claim of this size, plaintiffs sought at most $10,000 in punitive damages. Plaintiffs later amended their complaint to seek at least $50,000 in punitive damages as to each plaintiff.
Even though this amendment preceded their assertion of diversity jurisdiction, there likewise was no intervening discovery that would explain such a change in the request. In fact, one of plaintiffs' current counsel has acted as receiver for NCE in a lawsuit filed by the Commodity Futures Trading Commission against NCE. That attorney, acting both as NCE's receiver and as attorney for two individual plaintiffs, brought suit in the Western District of Tennessee against individuals associated with NCE. It would appear that at the time the initial complaint was filed plaintiffs were amply prepared to estimate accurately the amount of punitive damages they would seek.
Accordingly, the Court seriously questions the adequacy of the amount in controversy as to the Missouri plaintiff and without that individual's claim, this Court clearly would not have personal jurisdiction over defendant. The Court need not rest on this potential infirmity, however, because it concludes, in any event, that it lacks personal jurisdiction over Kassel.

ORDER AND ORDER NUNC PRO TUNC
Pursuant to the memorandum filed on this date and incorporated herein,
IT IS HEREBY ORDERED that defendant's motion to quash service of process and to dismiss action for lack of personal jurisdiction is granted.
IT IS FURTHER ORDERED, nunc pro tunc, that the order of February 11, 1992, is hereby amended so as to provide that all claims of plaintiffs Jack A. Fansher, Dr. Onous J. Wells, Hugh Landers and Bernice Landers, are dismissed without prejudice.
*807 IT IS FURTHER ORDERED that defendant's motion to dismiss third amended complaint is denied as moot.
IT IS FURTHER ORDERED that defendant's motion to dismiss for improper venue is denied as moot.
NOTES
[1] That case implicated the due process clause of the Fifth Amendment rather than the Fourteenth Amendment. The court concluded, however, that the two clauses mean the same thing and relied on Fourteenth Amendment case law to reach its decision.
[2] In Pacific Mut. Life Ins. Co. v. Haslip, ___ U.S. ___, ___, 111 S.Ct. 1032, 1046, 113 L.Ed.2d 1 (1991), the Supreme Court concludes that a punitive damages award of more than four times the amount of compensatory damages, although not crossing the line into the area of constitutional impropriety, may be close to the line. In that case, the award was also 200 times plaintiff's out-of-pocket expenses. The Court does not indicate which proportion is most pertinent. In any event, this Court has not had an opportunity to review all the factors relevant in a determination of punitive damages.