Sawtelle v. Farrell                    CV-94-392-M    04/28/95
                UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE


Arthur F. Sawtelle and Judith M.
Sawtelle as Administrators of
The Estate of Corey A. Sawtelle,
     Plaintiffs,

     v.                                        Civil No. 94-392-M

George E. Farrell, Esq.; Speiser,
Krause, Madole & Lear, A Partnership;
Michael S. Olin, Esq.; and Podhurst, Orseck,
Josefsberg, Eaton, Meadow, Olin & Perwin, P.A.,
     Defendants.



                         O R D E R


     This case raises an issue of substantial interest to those

rendering professional services previously considered local in

nature, but which, due to increasing ease of travel and

communication, now routinely touch or relate to distant people

and jurisdictions.  The precise question of law presented in this

case is not entirely new, but neither is it completely settled:

How much contact with a foreign client's state must a lawyer have

before he or she may properly be brought before the courts of

that state to answer charges of professional negligence?

In this age of advanced telecommunications, it is not uncommon for a lawyer to represent a geographically distant client without meeting the client in person or traveling to the state in which the client resides. Transactions of all sorts are now routinely initiated, negotiated, and resolved via teleconference. Documents are easily generated, reviewed, edited, and transmitted by facsimile, electronic mail, or overnight express to the remotest of locations. While ease of communication has facilitated representation of distant clients, it has also raised difficult questions concerning the legitimate exercise of in personam jurisdiction when those distant clients seek to hale their attorneys into local forums.

This is a legal malpractice action in which plaintiffs seek to recover damages allegedly sustained as a result of negligent representation provided by two attorneys and their law firms in connection with litigation in the State of Florida. Plaintiffs are residents of New Hampshire and none of the defendants resides in, nor is any licensed to practice law in New Hampshire. Before the court are motions to dismiss for lack of personal jurisdiction filed by defendants George Farrell, Esquire ("Farrell"), Michael Olin, Esquire ("Olin"), Podhurst, Orseck,

2

Josefsberg, Eaton, Meadows, Olin & Perwin, P.A. (the "Podhurst firm"), and Speiser, Krause, Madole & Lear (the "Speiser firm").[1] Fed.R.Civ.P. 12(b)(2).

## Factual Background.

Plaintiffs Arthur Sawtelle and Judith Sawtelle are residents of Jaffrey, New Hampshire. On May 21, 1989, their son Corey was killed in an airplane accident following a mid-air collision over the New Hampshire and Vermont border. Several months after their son's death, plaintiffs contacted a New Hampshire attorney to discuss the possibility of bringing a wrongful death suit on behalf of their son's estate.[2] The local attorney (who is not a defendant here) referred plaintiffs to Attorney Juanita Madole, of Speiser, Krause, Madole & Cook, a California based law firm, with offices in other states as well. That referral was

---

[1] Plaintiffs initially failed to serve defendant Farrell in a timely fashion and agreed to his dismissal from this case, without prejudice. They then brought a separate action against Farrell, based upon the same underlying facts as those giving rise to this action. The court consolidated the cases and now addresses each of the pending motions to dismiss.

[2] Under New Hampshire law, wrongful death claims are choses in action that belong to and are brought by and on behalf of the decedent's estate. N.H. RSA 556:12.

presumably based on the firm's reputation for expertise in the field of aircraft accident litigation.

In March, 1990, Attorney Madole sent duplicate originals of a retainer agreement, which she had already executed on behalf of Speiser, Krause, Madole & Cook (not a defendant) and its Washington, D.C. affiliate, the Speiser firm. Plaintiffs signed the agreement in New Hampshire and, as instructed by Attorney Madole, returned an executed original to her. Attorney Madole then transferred the case to the Speiser firm in Washington, D.C., where it was assigned to defendant Attorney George Farrell. Although Farrell never met plaintiffs in person, he spoke to them on the telephone and sent at least fifteen letters to them in New Hampshire during the course of his representation.

After reviewing the circumstances of Corey's death and the applicable law in various forums that might be available to the estate, Attorney Farrell recommended Florida, where the underlying defendants resided, as the most advantageous place to bring the estate's wrongful death case and plaintiffs' own related claims. Plaintiffs agreed, and Farrell engaged the Podhurst firm to assist as local counsel. The Podhurst firm, a

4

Florida professional association, is engaged in the practice of law in the State of Florida. Defendant Michael Olin is a resident of Florida and is a member of the Podhurst firm. He is licensed to practice law in Florida. He is not, however, licensed to practice law in New Hampshire. At no time during the course of their representation of plaintiffs and the estate did Olin or any other member of the Podhurst firm enter New Hampshire or solicit or conduct business in New Hampshire; all work performed for or on behalf of plaintiffs and the estate was done in Florida.

On March 26, 1991, defendant Olin filed a wrongful death action on behalf of the estate (and plaintiffs individually) in the Broward County (Florida) Judicial Circuit Court. Olin signed the complaint for the estate on behalf of both the Speiser firm and the Podhurst firm.

Plaintiffs allege that the estate's attorneys were negligent in their handling of the matter. They say defendants negotiated a woefully inadequate settlement of the estate's wrongful death claim, without having taken any depositions, without having secured an economist's projection of the decedent's lost earning

5

capacity, and without having consulted any liability experts, or engaging in any substantial investigative efforts. Plaintiffs further allege that defendants negligently advised them to accept the inadequate settlement proposal ($155,000.00) which, in reliance upon counsels' apparent expertise, they did.

Sometime later, plaintiffs discovered that the estate of Ronald Brown (Corey's flight instructor, who was killed in the same accident) had also filed a wrongful death suit in Florida (the "Brown Action"), and that the Brown Action had been consolidated with the case brought by Corey's estate. After plaintiffs had finally settled the estate's claim for $155,000.00, they learned that the similar Brown Action had settled for $500,000.00.

Plaintiffs explain the disparity between the two settlements as the direct result of their attorneys' negligent preparation and handling of the wrongful death action and negligent advice to accept an inadequate settlement offer. Defendants move to dismiss plaintiffs' suit, asserting the absence of in personam jurisdiction over them in New Hampshire.

6

## Standard of Review.

It is well established that in a diversity case personal jurisdiction over a nonresident defendant is governed, at least in part, by the forum state's long-arm statute. Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell, Partnership v. Medfit Int'l, Inc., 982 F.2d 686, 690 (1st Cir. 1993). And, when personal jurisdiction is contested, the plaintiff bears the burden of establishing that the court has such jurisdiction. Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 8 (1st Cir. 1986).

Allegations of jurisdictional facts are construed in the plaintiff's favor, Buckley v. Bourdon, 682 F.Supp. 95, 98 (D.N.H. 1988), and, if the court proceeds based upon the written submissions of the parties without an evidentiary hearing, the plaintiff need only make a prima facie showing that jurisdiction exists. Kowalski, 787 F.2d at 8; Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 674-75 (1st Cir. 1992). Nevertheless, the plaintiff's demonstration of personal jurisdiction must be based on specific facts set forth in the record in order to defeat a defendant's motion to dismiss. And, "in reviewing the record before it, a court `may consider pleadings, affidavits, and other

7

evidentiary materials without converting the motion to dismiss to a motion for summary judgment.'" <u>VDI Technologies v. Price</u>, 781 F.Supp. 85, 87 (D.N.H. 1991) (quoting <u>Lex Computer & Management Corp. v. Eslinger & Pelton, P.C.</u>, 676 F.Supp. 399, 402 (D.N.H. 1987))

Before a court may exercise personal jurisdiction over a non-resident defendant, the plaintiff must show, first, that the forum state's long-arm statute confers jurisdiction over the defendant, and second, that the exercise of jurisdiction comports with constitutional due process standards (by establishing that the defendant has sufficient "minimum contacts" with the forum state). <u>Kowalski</u>, 787 F.2d at 9-10. The New Hampshire individual long-arm statute, N.H. RSA 510:4, "provides jurisdiction over foreign defendants to the full extent that the statutory language and due process will allow." <u>Estate of Mullen by Mullen v. Glick</u>, No. 94-377-L, 1994 U.S. Dist. LEXIS 16020 at *5 (D.N.H. November 3, 1994) (quoting <u>Phelps v. Kingston</u>, 130 N.H. 166, 177 (1987)). Likewise, New Hampshire's corporate long-arm statute, N.H. RSA 293-A:15.10, authorizes jurisdiction over foreign corporations to the full extent permitted by federal law.

8

McClary v. Erie Engine & Mfg. Co., 856 F.Supp. 52, 54 (D.N.H. 1994).[3]

Stated another way, New Hampshire's individual and corporate long-arm statutes are coextensive with the outer limits of due process protection under the federal constitution.  Accordingly, the court's "proper inquiry . . . focuses on whether jurisdiction comports with federal constitutional guarantees."  Mullen, supra, at *6; see also McClary, supra, at 52.  Before a court may exercise personal jurisdiction over a foreign defendant in a manner consistent with the Constitution, the plaintiff must demonstrate that the defendant has "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."

_____

[3] In McClary v. Erie Engine & Mfg. Co., 856 F.Supp. 52 (D.N.H. 1994), this court (Devine, J.) held:

> [T]he Legislature's elimination of the restrictive long-arm language contained in [the former statute] and its provision for the service of foreign corporations by mail demonstrate that it intended RSA 293-A:15.10 to authorize jurisdiction over foreign corporations to the full extent allowed by federal law.  Because RSA 293-A:15.10 reaches to the federal limit, the traditional two-part personal jurisdiction inquiry collapses into the single question of whether the constitutional requirements of due process have been met.

Id., at 55.

Helicopteros Nacionales De Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984).  And, before finding that a defendant has such "minimum contacts," the court must be satisfied that the defendant's conduct bears such a "substantial connection with the forum state" that the defendant "should reasonably anticipate being haled into court there."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-75 (1985) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

A court may exercise either general or specific jurisdiction over a defendant.  "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state."  United Elec. Workers v. 163 Pleasant Street Corp., 960 F.2d 1080, 1088 (1st Cir. 1992).  Plaintiffs do not contend that their attorneys engaged in "continuous and systematic activity" in New Hampshire, nor do they ask the court to exercise general jurisdiction over them.  Accordingly, if the court may properly exercise personal jurisdiction over these defendants, it must be specific jurisdiction.

10

A court may exercise specific jurisdiction when the cause of action arises directly out of, or relates to, the defendant's forum-based contacts. United Elec. Workers, 960 F.2d at 1088-89. In an effort to assist district courts in determining whether they might properly exercise specific jurisdiction, the Court of Appeals has formulated a three-part test:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state contacts. Second, the defendant's in-state activities must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United Elec. Workers, 960 F.2d at 1089.


**Discussion.**

A.    Relatedness.

In explaining the application of the "relatedness" prong of the test, the Court of Appeals has:

> suggested an analogy between the relatedness requirement and the binary concept of causation in tort law under which both elements - cause in fact (i.e., the injury would not have occurred "but for" the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to

11

the cause of action) - must be satisfied to find causation sufficient to support specific jurisdiction.

United Elec. Workers, 960 F.2d at 1089. Here, plaintiffs claim the following factors satisfy the "relatedness" requirement: (i) plaintiffs executed the retainer agreement with the Speiser firm in New Hampshire; (ii) defendants directed legal advice to plaintiffs in New Hampshire, both by telephone and through the mail; (iii) defendants forwarded settlement documents to plaintiffs for their execution in New Hampshire; and (iv) the settlement proceeds were distributed in New Hampshire. Plaintiffs conclude that, "[t]he claim underlying the litigation, therefore, `directly arises out of, or relates to, the defendant's forum-state activities.'" Plaintiffs' Memorandum at 11 (quoting United Elec. Workers, 960 F.2d at 1089).

In general then, plaintiffs say that by directing communications to plaintiffs in New Hampshire and, more pointedly, by negligently causing harm which plaintiffs suffered in New Hampshire, defendants submitted themselves to the jurisdiction of this court. See e.g. Phelps v. Kingston, 130 N.H. 166 (1987). Phelps was a malpractice action brought by a New Hampshire resident against a Maine dentist in which the court

12

held that defendant had sufficient minimum contacts with New Hampshire to support the exercise of in personam jurisdiction under the state's long-arm statute.  In reaching its conclusion, the New Hampshire Supreme Court found that, while "[t]he acts allegedly constituting the tort . . . arguably occurred entirely in Maine . . . the injury or damage for which the plaintiff now seeks recovery . . . apparently occurred predominantly in New Hampshire."  Id., at 172-73.

Here, however, not only did the acts allegedly constituting the tort occur primarily, if not entirely, outside New Hampshire, but the injury or damage also occurred predominantly outside New Hampshire — in Florida.  This case is more closely analogous to Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7 (1st Cir. 1986) than to Phelps.  In Kowalski the court of appeals examined whether this court (Loughlin, J.) properly dismissed a legal malpractice action for lack of personal jurisdiction over the defendant attorneys.  The plaintiff, a New Hampshire resident at the time of her suit, alleged that the foreign law firm committed legal malpractice by allowing a Massachusetts wrongful death case to be dismissed for inattention and lack of

13

prosecution.  Affirming the district court's dismissal, the Court

of Appeals noted:

> Plaintiffs allege that the law firm knew of
> Larochelle's residence in New Hampshire and argue that
> the "effects" of its negligence were felt in New
> Hampshire.  This, they say, amounts to a situation
> where an injury is caused in New Hampshire by activity
> or conduct directed at that forum.  We do not think New
> Hampshire law justifies such a quantum leap.

Id. at 11.  The court of appeals concluded by holding that,

"[t]he injury occurred when the suit was dismissed by the

Massachusetts court.  The consequence of the dismissal is that

plaintiffs are barred from bringing a wrongful death action in

the Massachusetts courts.  The injury, if any, occurred in

Massachusetts."  Id., at 11.


The Court of Appeals for the Ninth Circuit recently followed

suit, rejecting a similar claim by an Oregon plaintiff who

asserted that an Oregon court had personal jurisdiction over a

California law firm:

> Bryant, an Oregon resident, employed defendants as
> counsel in a California lawsuit.  In his complaint,
> Bryant alleged that he was injured as a result of the
> defendants' failure to properly serve in California a
> defendant company in the California lawsuit. . . .
> Bryant's injury did not occur in Oregon, but in
> California.  The [district] court found that Bryant's

14

injury occurred in California because that was where ineffective service resulted in the dismissal of the defendant company in the California action.  Bryant argues, without citing any authority, that his injury actually occurred in Oregon because that is where his net worth was affected by improper service on the defendant company.  To permit a plaintiff to bring a suit in his own state solely on the basis that that is where he incurred an economic loss resulting from an out of state act, however, would ignore the requirement that there be sufficient `minimum contacts with the forum state' to comport with due process.

Bryant v. Weintraub, Genshlea, Hardy, Erich & Brown, 1994 U.S. App. LEXIS 29199 at *3-4 (9th Cir. October 11, 1994) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).

In another situation similar to that presented here, the Court of Appeals for the Seventh Circuit rejected a Wisconsin resident's claim that a Wisconsin district court had personal jurisdiction over an out-of-state law firm:

> Neither Wadel nor anyone else in his firm ever set foot in Wisconsin in connection with this matter.  The only significant connection between the suit and Wisconsin is that the plaintiff lives there; and you cannot get jurisdiction over a nonresident just by showing that you are a resident and would prefer to sue in your own state's courts.  By that reasoning, there would be no limits to personal jurisdiction over nonresidents.

Cote v. Wadel, 796 F.2d 981, 984 (7th Cir. 1986).  The Seventh Circuit then concluded that, "The handful of letters and phone

15

calls that passed between [plaintiff] and the Wadel firm is not enough to close the gap.  Personal jurisdiction over nonresidents of a state is a quid for a quo that consists of the state's extending protection or other services to the nonresident, a feature lacking here."  Id,. at 984 (citations omitted).  Here also, plaintiffs have failed to allege a quid pro quo sufficient to support this court's exercise of personal jurisdiction.

If plaintiffs have suffered harm, it is that they received inadequate compensation in settlement of the estate's wrongful death action, brought in Florida, which action has since been dismissed with prejudice.  As in Kowalski, supra, "[t]he consequence of the dismissal is that plaintiffs are barred from bringing a wrongful death action in the [Florida] courts.  The injury, if any, occurred in [Florida]," Kowalski, 787 F.2d at 11, upon settlement of that litigation.  It cannot be said that both elements of the binary test for jurisdiction established in United Elec. Workers, supra, are present here.  It is defendants' conduct in the course of representing plaintiffs in Florida, not New Hampshire, which ultimately gives rise to plaintiffs' claims of malpractice.

16

B.   Purposeful Availment.

To satisfy the "purposeful availment" prong of the jurisdictional test, plaintiffs must show that defendants took some affirmative action sufficient to promote the transaction of business in the State of New Hampshire.  United Elec. Workers, 960 F.2d at 1089-90; Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990).  Plaintiffs argue that because defendants entered into an attorney-client relationship with them, thereby assuming a continuing obligation to advise them with regard to the Florida wrongful death action, defendants did "purposefully avail" themselves of the privilege of doing business in New Hampshire. The court is compelled to disagree.

Defendants' contacts with the State of New Hampshire simply do not constitute "purposeful availment" of the privilege of doing business here.  While it is true that defendants agreed to provide legal advice and representation to plaintiffs, whom defendants knew were residents of New Hampshire, defendants' contacts with New Hampshire were limited to communicating with their clients at the place their clients happened to be.  The litigation was ongoing in Florida and professional services were delivered in Florida and perhaps elsewhere outside New Hampshire.

17

Defendants' limited contacts with New Hampshire cannot provide a sufficient basis upon which to exercise personal jurisdiction in a manner consistent with constitutional notions of due process.

A reported decision that would seem to support plaintiffs' position is <u>Marlot Carpentry, Inc. v. Phillips</u>, No. 85-0097-WF, 1993 U.S. Dist. LEXIS 5108 at *14 (D.Ma. March 26, 1993), in which the court held that a New York attorney had submitted himself to the jurisdiction of Massachusetts' courts by maintaining control over Massachusetts litigation (through local counsel), by representing to third parties that he was counsel to one of the litigants in the Massachusetts proceeding, and by deliberately seeking the assistance of a Massachusetts-licensed attorney to assist him in that matter. Based upon these factors, the court held that the out-of-state attorney had "transacted business" in and established "minimum contacts" with the Commonwealth sufficient to satisfy due process requirements. But that case is distinguishable.

Here the court is not presented with an out-of-state attorney who has exercised control over in-state litigation, but rather with foreign counsel exercising control over foreign

18

litigation on behalf of New Hampshire residents.  This case is better compared to cases like <u>Austad Co. v. Pennie & Edmonds</u>, 823 F.2d 223 (8th Cir. 1987).  In <u>Austad Co.</u> the Eighth Circuit considered whether a New York law firm which represented a South Dakota corporation in patent litigation filed in the federal district court in Maryland was subject to the jurisdiction of the federal district court in South Dakota.  After reviewing the pertinent jurisdictional facts, the court of appeals held that the defendant law firm's contacts with South Dakota were insufficient to satisfy the "purposeful availment" inquiry:

> [C]ontacts asserted by [plaintiff] include numerous phone calls between New York and South Dakota, the use of courier services (at [plaintiff's] expense), monthly billings mailed to South Dakota, and checks paid by a South Dakota bank.  These contacts, [plaintiff] contends, amounted to an ongoing attorney-client relationship between [plaintiff] and Pennie & Edmonds sufficient to warrant a finding of personal jurisdiction in this case.
>
> While we do not dispute [plaintiff's] claim that an attorney-client relationship existed between [plaintiff] and Pennie & Edmonds, we do not believe that Pennie & Edmonds had sufficient contacts with South Dakota to confer personal jurisdiction.

<u>Id.</u>, at 226.  The Eighth Circuit has consistently held that the use of interstate mail, telephone, and banking facilities are, standing alone, insufficient to satisfy constitutional due

19

process prerequisites to the exercise of long-arm jurisdiction. T.J. Raney & Sons, Inc. v. Security Savings & Loan Ass'n, 749 F.2d 523, 525 (8th Cir. 1984); Institutional Food Marketing Associates, Ltd. v. Golden State Strawberries, Inc., 747 F.2d 448, 456 (8th Cir. 1984); Scullin Steel Co. v. National Railway Utilization Corp., 676 F.2d 309, 314 (8th Cir. 1982); Federal Deposit Ins. Corp. v. Malmo, No. 89-1266-C-5, 1990 U.S. Dist. LEXIS 20108 (E.D.Mo. March 12, 1990), aff'd 939 F.2d 535 (8th Cir. 1991).

The Court of Appeals for the Ninth Circuit has similarly held that attorneys' telephone calls and mailings directed at the client's state of residence are, standing alone, insufficient to constitute "purposeful availment:"

> Krug, a California resident, initially retained Lomonaco in October 1990 to represent Krug in a pending Tennessee action. . . . The normal incidents of Lomonaco's representation of Krug, such as making telephone calls and sending letters to California, do not constitute purposeful availment. Furthermore, the mere fact that Lomonaco performed services for Krug in connection with the California actions is too attenuated to create "substantial connection" with California.

Krug v. Lomonaco, 1993 U.S. App. LEXIS 20258 at *2, 4 (9th Cir. August 5, 1993).

20

Here, the defendant attorneys' contacts with the State of New Hampshire are also limited to written and telephonic communications with their clients. Plaintiffs do not allege that defendants were licensed to practice law in New Hampshire, nor do they claim that any defendant physically appeared in New Hampshire. Defendants did not advertise their services in New Hampshire and did not contact plaintiffs to solicit their or the estate's business. Rather, plaintiffs sought out and retained defendants, through a local attorney, in the jurisdictions where defendants do practice law. But see, e.g., Clinton Paper Co. v. Stimmel, No. 92-11418-NG, 1994 U.S. Dist. LEXIS 8798 at *9 (D.Ma. June 20, 1994) ("Although [defendant's] firm did not actually solicit [plaintiff's] business here, it is non-dispositive that the plaintiffs made the initial solicitations . . . What is significant is that defendant's contacts with the forum were deliberate and not fortuitous.").

In Clinton Paper, supra, a federal district court held that during the course of representing a Massachusetts corporation in West Virginia litigation, the partners of a West Virginia law firm "transacted business" in Massachusetts and were subject to the jurisdiction of Massachusetts' courts under the

21

Commonwealth's long-arm statute.  Specifically, the court found that representatives of the defendants met with plaintiff in Massachusetts, sent correspondences to plaintiff in Massachusetts, and made a number of telephone calls to plaintiff in Massachusetts.  The court then concluded that these contacts with the Commonwealth of Massachusetts were deliberate and non-fortuitous and, therefore, supported the exercise of in personam jurisdiction in a manner consistent with constitutional due process requirements.  The district court did not view Kowalski as controlling precedent because it found the facts of Clinton Paper to be distinguishable from those in Kowalski.

Here, however, the facts are quite similar to those in Kowalski, and that decision does constitute controlling precedent.  Defendants' contacts with New Hampshire were limited: written and telephonic communications with their clients, who happened to live in this state.  More is required.  See e.g. Sher v. Johnson, 911 F.2d 1357, 1363 (9th cir. 1990) ("[Defendant's] three trips to California were discrete events arising out of a case centered entirely in Florida; they appear to have been little more than a convenience to the client, who would otherwise have had to travel to Florida. . . . The same cannot be said when

22

we consider in addition the deed of trust . . . . By requiring the execution of a deed to California real estate, the [defendant] was looking to the laws of California to secure its right to payment under its contract with [plaintiff.]"). There is no indication in the pleadings that defendants sought to invoke the protections of New Hampshire law, either by obtaining security for payment of fees, as in <u>Sher</u>, or otherwise.

Plaintiffs also argue that defendant Speiser firm delivered its legal services into the national stream of commerce by "cultivating [its] reputation as a nationwide expert in the field of aviation tort litigation."[4] Plaintiffs claim that by holding themselves out as national aviation law experts, defendants purposefully derive benefits from their interstate activities, including deliberate contact with New Hampshire. The Court of Appeals for the First Circuit has, however, rejected the so-called "stream of commerce" theory as a means of supporting the

---

[4] Plaintiffs also allege that they obtained the name of the Speiser firm through an advertisement in AOPA Magazine, a magazine published by the Aircraft Owners and Pilots Association. Affidavit of Arthur Sawtelle, at para. 4. Defendants deny having advertised in AOPA magazine and have submitted the affidavit of an advertising assistant at the Aircraft Owners and Pilots Association who states that she has personally reviewed the classified advertising in the AOPA magazine for the years 1988 through 1991 and found no advertising by the Speiser law firm.

23

exercise of personal jurisdiction over out-of-state defendants. Boit v. Gar-Tec Products, Inc., 967 F.2d 671 (1st Cir. 1992). And, while the fact that a defendant has introduced its product into the national stream of commerce might well remain a relevant consideration in personal jurisdictional analysis, plaintiffs have still generally failed to demonstrate that defendants "purposefully availed" themselves of the privilege of conducting business in New Hampshire.

The totality of defendants' contacts with New Hampshire are insufficient to meet the "purposeful availment" element of the jurisdictional test. If it is to remain at all meaningful, jurisdictional analysis must extend beyond a superficial determination of the residence of the plaintiff. Here, analysis of the pertinent facts and controlling law leads inevitably to the firm conviction that exercising personal jurisdiction over these defendants would contravene both Constitutional guarantees of due process and traditional notions of fair play. Defendants' New Hampshire contacts were not of a kind or extent that defendants should have reasonably anticipated being haled into court here.

24

C.    The Gestalt Factors.

Finally, the "Gestalt factors," which comprise the third part of the prescribed jurisdictional analysis, require consideration of:

> [T]he plaintiff's interest in obtaining convenient and effective relief; the burden imposed upon the defendant by requiring [them] to appear; the forum's adjudicatory interest; the interstate judicial system's interest in the place of adjudication; and the common interest of all affected sovereigns, state and federal, in promoting substantive social policies.

Donatelli v. National Hockey League, 893 F.2d 459, 465 (1st Cir. 1990) (citations omitted).  Plaintiffs convincingly argue that the burden of litigating in New Hampshire imposed on the Speiser firm and Farrell (Virginia residents) would not be substantively different from the burden of litigating in Florida (of course, the comparative burden New Hampshire litigation would pose for the Podhurst firm and Olin, Florida residents, would be much greater).  Nevertheless, the remaining Gestalt factors weigh against the exercise of personal jurisdiction over defendants.

While litigating their claims in New Hampshire would obviously be most convenient to plaintiffs, that consideration is not outcome determinative.  Plaintiffs do not allege that they

25

cannot obtain fair and just relief in another forum.  And, aside from plaintiffs' residency in New Hampshire, few, if any, other factors suggest that New Hampshire has a strong sovereign or social policy interest in providing the forum for resolving this dispute, particularly because the defendants are residents of other states, their professional services were performed elsewhere, those services were regulated (licensed) elsewhere, the malpractice, if any, must be judged against the prevailing standard in a foreign jurisdiction, and the harm if any occurred as a result of settlement, which occurred in Florida, the state in which plaintiffs chose to litigate.  Because the underlying litigation was brought in Florida (where plaintiffs knowingly and voluntarily submitted themselves to jurisdiction and where they purposefully appeared through counsel) and because at least some of the defendants are residents of Florida and licensed to practice law there, Florida would appear to have a much greater interest in resolving the plaintiffs' allegations of malpractice than does New Hampshire.  Donatelli, 893 F.2d at 465.

## Conclusion.

For the foregoing reasons, the motions to dismiss submitted by defendant Speiser, Krause, Madole & Lear (document no. 5),

26

defendant George Farrell (document no. 28), and defendants
Michael Olin and Podhurst, Orseck, Josefsberg, Eaton, Meadow,
Olin & Perwin, P.A. (document no. 11) are granted.


      SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

April 28, 1995

cc:  Mark A. Abramson, Esq.
     Joseph M. Kerrigan, Esq.
     Paul R. Kfoury, Esq.