JEAN M. CONNOR ET AL., EXECUTORS (ESTATE OF IDA E. McKINNEY) *v.* SARAH G. HART ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued November 6—decided December 10, 1968

*Francis J. McNamara, Jr.,* and *John F. Spindler,* with whom, on the brief, was *Gayle B. Wilhelm,* for the plaintiffs.

*Palmer S. McGee, Jr.,* with whom was *Charles W. Page,* for the defendant Oakwood School, Inc., et al.

*Alexander M. Hart,* with whom was *Marcia B. Smith,* for the named defendant et al.

*William J. Murray,* pro se as guardian ad litem; with him, on the brief, was *John P. Bigda,* for the defendant Alexander R. Hart et al.

*F. Michael Ahern,* assistant attorney general, appeared for the defendant Robert K. Killian, attorney general.

KING, C. J. This is an action seeking advice as to the trustees' powers in the administration of a testamentary trust, hereinafter referred to as the Oakwood trust, which was created for the benefit of the Oakwood School, Inc., in subdivision I of paragraph second of the second codicil to the will of Ida Ethelyn McKinney, deceased. Each defendant admitted the allegations of the complaint, and, on the resulting agreed statement of facts, the parties stipulated for advice in the form of answers to two stated questions.

Miss McKinney, a spinster, died on June 18, 1964, a resident and domiciliary of Greenwich, leaving a gross estate in excess of thirteen million dollars. Her will, dated March 14, 1955, and three codicils thereto, respectively dated December 7, 1956, October 5, 1959, and January 27, 1961, were duly admitted to probate by the Probate Court for the district of Greenwich on June 23, 1964, and on the same date the plaintiffs Mrs. Jean McKinney Connor, who was the testatrix' niece, next of kin and sole heir at law, and the First National City Bank were approved and duly qualified as coexecutors of the will and codicils.

On July 30, 1964, the plaintiffs Jean McKinney Connor, the First National City Bank, and Howard S. Tuthill were appointed trustees of what will be referred to as the Connor trust, which was created under Article Eleventh of the will itself.

The will, in Article Eleventh, provided that the residue of the estate, which constituted its major portion, should be held in trust for the Connor family, which now consists of Mrs. Connor, the defendant Mrs. Sara G. Hart, who is Mrs. Connor's only child, and the defendants Alexander Rene Hart, born May 25, 1965, and Bret Gordon Hart, born

March 5, 1967, children of Sara G. Hart. Each of the foregoing members of the Connor family is, in one way or another, an actual or potential beneficiary of the Connor trust.

The first and third codicils are not, and are not claimed to be, material in the determination of this controversy and need not be specifically discussed. The second codicil is material. It revokes Article Eleventh of the will and provides, in a substitute Article Eleventh, that one-third of the residue should be severed and separately established as the Oakwood trust, leaving the balance (two-thirds) of the residue for the Connor trust. It is provided that this Oakwood trust is to run for a period of twenty years and one month from the date of the testatrix' death, that during that period "the net income" shall be paid to the Oakwood School, Inc., hereinafter referred to as Oakwood, and that at the end of that period the corpus shall be returned to, and become a part of, the residue and thus in turn become a part of the Connor trust corpus. It was further provided that if Oakwood should, during the duration of the trust of which it is the beneficiary, cease to exist or function as an educational institution, the trustees should have the power to pay the net income of the Oakwood trust to such tax-exempt charitable institutions as the trustees "in their absolute discretion shall select and determine". See General Statutes § 45-80.

Oakwood is an educational institution located in Poughkeepsie, New York, and for well over a century has been owned and operated as a Quaker school although it accepts pupils of any religious persuasion. There is no claim by anyone that Oakwood, as an institution, does not qualify as a charity under the Internal Revenue Code.

The claim of the executors for the deduction, as a charitable gift, of the discounted value, computed to amount to over two million dollars, of the Oakwood trust income was, however, disallowed, in toto, by the District Director of Internal Revenue at Hartford, on September 15, 1967, in a communication stating that "[t]his [Oakwood] bequest is not allowable as a charitable deduction under Section 2055 of the [Internal Revenue] Code as charity's interest is not presently ascertainable and hence not severable from the non-charity interest." See Int. Rev. Code of 1954, § 2055 (26 U.S.C. § 2055). The claim that the discounted value of the Oakwood interest is not ascertainable seems to be wholly predicated on certain discretionary powers given the trustees which the beneficiaries of the Connor trust claim would permit the trustees to increase or decrease, in their discretion, the net income which would otherwise be distributed to Oakwood during the term of the trust.

The testatrix provided that, if for any reason it should be determined in the federal tax proceedings in her estate that the Oakwood trust would not qualify for a charitable deduction, that trust should terminate and the corpus should pass to the Connor trust as though it had originally formed a part of the corpus of that trust. Thus, if the ruling of the District Director stands, Oakwood receives nothing, and the Connor trust is left as it would have been had the Oakwood trust not been created.

The plaintiffs instituted this action, making the beneficiaries of the Connor trust and the Oakwood trust parties defendant and seeking a construction of the pertinent provisions of the will and the second codicil to determine whether, as the District Director claims, Oakwood's discounted interest is

unascertainable and thus not deductible. The attorney general was made a party defendant because of his duty, under § 3-125 of the General Statutes, to "represent the public interest in the protection of any gifts, legacies or devises intended for public or charitable purposes".

The parties defendant also included a guardian ad litem appointed to represent the interests of the two minor children of Sara G. Hart and of persons not in being or not ascertained who may have any interest in the construction of the will and codicils.

All parties stipulated that this court be requested to answer, on the basis of the admitted allegations of the complaint, the two following questions:

"(a) Did Miss McKinney intend by the provisions of her Will, as amended by its Codicils, to authorize her Executors and Trustees to exercise any or all of the powers, authorities and discretions conferred upon them thereunder, for the purpose or with the effect of materially altering the value of the respective beneficial interests of the income beneficiary and remaindermen in the Oakwood School Trust, to the detriment of the income beneficiary?

"(b) May the Executors and Trustees exercise the powers, authorities and discretions conferred upon them by the Will, as amended by its Codicils, in such a manner as would deprive Oakwood School, Inc. of substantially that degree of beneficial enjoyment of the Oakwood School Trust property which the principles of the law of trusts accord to a person who is unqualifiedly designated as the income beneficiary of a trust?"

The attorney general, Oakwood, and Smith College (made a party defendant as a remote, contingent beneficiary of any residue not effectually disposed of) each claim that both questions should be

answered in the negative. The other defendants, beneficiaries of the Connor trust, claim that each question should be answered in the affirmative.

Of course, the taxability of the Oakwood trust bequest is a matter which, if contested, must ultimately be determined by the federal courts. But in this particular case taxability will almost certainly depend on the powers, in the light of Connecticut trust law, accorded the trustees with respect to the management of the Oakwood trust, and especially the power given in paragraph 13 of Article Sixteenth of the original will. These powers may properly be determined by this court as a matter of construction of a Connecticut trust. Where, as here, there is an adversary proceeding prosecuted in good faith, we should expect that our decision would be accepted by the federal taxing authorities, as well as by the federal courts, as a correct determination of Connecticut law. See cases such as *Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 465, 87 S. Ct. 1776, 18 L. Ed. 2d 886; *Doty v. Commissioner of Internal Revenue*, 148 F.2d 503, 505 (1st Cir.); *Old Colony Trust Co. v. Silliman*, 352 Mass. 6, 8, 223 N.E.2d 504; *Industrial National Bank of Rhode Island v. Rhode Island Hospital*, 99 R.I. 289, 293, 207 A.2d 286.

It will be recalled that the will itself, in Article Eleventh, made the entire residue the corpus of the Connor trust and that the second codicil revoked Article Eleventh of the will and made a new, substitute disposition of the residue. Subdivision I of the substitute Article Eleventh provided that one-third of the residue should form the Oakwood trust, and subdivision II provided that the balance (two-thirds) of the residue should form the Connor trust.

Article Sixteenth of the will conferred upon the

trustees broad powers of administration of any trusts including, in paragraph 13 of that Article, the powers "in their sole discretion" to determine what shall constitute gross and net income and what shall constitute principal and to allocate any charge to principal or to income or partly to each. It is probably this paragraph which especially caused the District Director to rule that Oakwood's interest was unascertainable.

To avoid misunderstanding, it must be carefully noted that, although Articles Thirteenth and Fourteenth of the original will accorded the trustees powers to withhold and accumulate income, it was specifically provided in the second codicil establishing the Oakwood trust that those powers of accumulation and withholding should not apply to the Oakwood trust.

The administrative powers in Article Sixteenth of the will which the beneficiaries of the Connor trust seem to claim support the position of the District Director that the discounted value of Oakwood's interest is unascertainable are paragraphs 6, 7, 10, 11 and especially 13, which read as follows:

"6. To make distribution in respect of my estate in cash or in kind, or partly in cash and partly in kind, and to determine the assets to be used in so doing, and I declare that the judgment of my Executors or Trustees in the premises shall be final and conclusive upon all persons interested in my estate to the extent permitted by law;

"7. To employ such attorneys, investment counsel, custodians, or brokers as my Executors or Trustees may deem advisable for the purpose of assisting them in the administration of my estate, and to pay to them the usual compensation for such services and to charge the same against the income or

principal of my estate or the trusts hereunder in such proportions and in such manner as my Executors or Trustees in their discretion may determine;

.        .        .        .        .

"10.  To refrain from amortizing the premium or discount on any security purchased or otherwise received by the Executors or Trustees;

"11.  To add to principal all dividends or distributions in stock or other securities to the extent legally permissible, and to treat as income all cash dividends excepting liquidating dividends;

.        .        .        .        .

"13.  To determine in their sole discretion what shall constitute principal, what shall constitute gross income, and what shall constitute net income hereunder; and to allocate any charge (including, without limitation by the specification thereof, attorneys' fees, executors' and trustees' fees, guardian's fees, and general administration expenses) to principal or income, or partly to both, as they may determine".

In the interests of brevity, we confine our discussion, although not our consideration, to paragraph 13 of Article Sixteenth, quoted above, since it is obvious that this paragraph most strongly supports the position taken by the District Director and the beneficiaries of the Connor trust. If this provision does not have the claimed effect, it is clear that none of the other quoted administrative provisions would have that effect.

The first of the two questions to be answered really consists of two parts. As to the first part, there can be no doubt that the trustees are given no dispositive, as distinguished from administrative,

powers and that they cannot, under settled law prevailing not only in Connecticut but elsewhere, exercise any of their powers for the purpose (even if well-intended) of materially altering the value of the beneficial interests under the Oakwood trust to the detriment of Oakwood as an income beneficiary. To hold otherwise would permit the trustees to give Oakwood's income in whole or in part to the beneficiaries of the Connor trust under the motivation of a purpose and desire to enrich the Connor trust at the expense of the Oakwood trust. *Conway* v. *Emeny,* 139 Conn. 612, 619, 96 A.2d 221; 3 Scott, Trusts (3d Ed.) §§ 187.4, 187.5; Restatement (Second), 1 Trusts § 187, comments f and g, and Appendix, p. 313.

The second portion of the first question asks whether the trustees can exercise any of their powers (regardless of purpose) with the effect of materially altering the value of the interests under the Oakwood trust to the detriment of Oakwood as an income beneficiary. Although the use of the term "sole discretion" confers a wide discretion, no language in a trust will be so construed as to remove a trustee from equitable control. "To the extent to which the trustees had discretion, the court will not attempt to control their exercise of it as long as they have not abused it. . . . But the law will not tolerate its abuse, however great the creator of the trust intended the grant of discretion to be." *Conway* v. *Emeny,* supra. This rule applies even when the will has used the term "absolute" or "sole" discretion. Ibid. The same rule is recognized in *Connecticut Bank & Trust Co* v. *Lyman,* 148 Conn. 273, 281, 170 A.2d 130. The rule applies with perhaps even more rigor when, as here, a charitable trust is involved. *Ministers Benefit Board* v. *Meriden Trust*

*Co.,* 139 Conn. 435, 448, 94 A.2d 917, and cases therein cited.

In the construction of a testamentary trust, the expressed intent of the testator must control. This intent is to be determined from reading the instrument as a whole in the light of the circumstances surrounding the testator when the instrument was executed, including the condition of his estate, his relations to his family and beneficiaries and their situation and condition. *Connecticut Bank & Trust Co.* v. *Lyman, supra,* 279.

When we apply this rule, it is indisputably clear that the testatrix' dominant, expressed intent was to create a charitable trust under which Oakwood, over a period of twenty years and one month, was to receive "the net income" of the Oakwood trust corpus. As already pointed out, provisions for withholding and accumulating income in the Connor trust were specifically made inapplicable to the Oakwood trust. As a charitable trust, the Oakwood trust is to be construed, so far as reasonably possible, so as to uphold it. *Waterbury Trust Co.* v. *Porter,* 131 Conn. 206, 214, 38 A.2d 598; *Ministers Benefit Board* v. *Meriden Trust Co., supra.* That this is the Connecticut rule is reinforced, if any reinforcement could be considered necessary, by § 45-79 of the General Statutes, requiring that any charitable trust "shall forever remain to the uses and purposes to which it has been granted according to the true intent and meaning of the grantor and to no other use"; *Ministers Benefit Board* v. *Meriden Trust Co., supra;* and by § 3-125, requiring the attorney general to represent the public interest in protecting charitable dispositions. *New York East Annual Conference* v. *Seymour,* 151 Conn. 517, 521, 199 A.2d 701.

The administrative powers to determine what is principal and what is gross and net income and to allocate charges to either income or principal or both are powers often conferred in wills and here were included in a number of other administrative powers grouped together generally in Article Sixteenth of the will. It certainly would constitute a violent and wholly unwarranted repudiation and reversal of heretofore settled Connecticut trust law to construe any or all of these administrative powers conferred on the trustees as powers which, separately or collectively, authorized the trustees to destroy or cripple a charitable bequest and turn Oakwood's income over, in whole or in part, to the Connor trust, thus in effect nullifying the whole charitable purpose of the second codicil and leaving the original will as though that codicil had never existed. For the trustees so to do would be an impermissible and illegal abuse of discretion and would obviously be in violation of the settled rule that "[w]hen there are two or more beneficiaries of a trust, the trustee is under a duty to deal impartially with them." Restatement (Second), 1 Trusts § 183. The Oakwood trust is a clear gift of "the net income" of the trust corpus to an admitted charity. Equity would interfere to protect this charitable gift from impairment or destruction by the trustees or anyone else. Although this determination is dispositive of this proceeding for advice, there is a second and independent ground which requires the same result.

In subdivision I of paragraph second of the second codicil the testator provides: "None of the provisions of Articles Thirteenth and Fourteenth of my said Will shall be applicable to the charitable trust hereinabove established and my Trustees shall

have no power, authority or discretion to accumulate or withhold the distribution of any part of the net income of said charitable trust.

"In addition, and notwithstanding any other provisions of my said Will to the contrary, I hereby expressly provide that the Trustees of this charitable trust shall not have any rights, powers, duties, authority, privileges or immunities, whether or not discretionary, granted to my Executors or my Trustees by any other provisions of said Will, if or to the extent that such rights, powers, duties, authority, privileges or immunities would disqualify said charitable trust for the federal estate tax deduction hereinafter mentioned.

"It is my understanding and intention that my estate will be entitled to deduct, in computing my net taxable estate for federal estate tax purposes, an amount equal to the present worth (as of the date of my death) of the right of the charitable beneficiary to receive the income from the aforementioned charitable trust for a period of twenty (20) years and one (1) month. If, for any reason, it shall be determined in the federal estate tax proceedings in my estate that such a deduction is not allowable in computing my net taxable estate then and in that event the aforesaid charitable trust shall immediately terminate and my Trustees shall dispose of the principal thereof as if the same had originally constituted an integral part of the share of my residuary estate disposed of under subdivision II of this Article Eleventh."

In the first and second paragraphs quoted above, the testatrix unequivocally expressed the intent that the trustees should have no power, discretionary or otherwise, to withhold from Oakwood "the net income" of the Oakwood trust or to take any other

action which would or could result in Oakwood's loss of tax deductibility as a charitable trust.[1] Any provision otherwise appearing to confer such power on the trustees would, under the express terms of the second quoted paragraph, be rendered inapplicable to the Oakwood trust.

The third of the above-quoted paragraphs discloses an identifiable intention to make a tax free net income gift to Oakwood and that, if this intention could not be accomplished, in spite of the language used in the codicil, the gift to Oakwood was to fall. Such an expressed intent is an important consideration in the construction of the terms of the will. *State Tax Commission* v. *Loring,* 350 Mass. 568, 570, 215 N.E.2d 751.

In conclusion, it is clear that the trustees were given no powers to destroy or impair this net income gift to Oakwood. The expressed intent of the testatrix to this effect is completely clear and is fully efficacious, and equity would, if it were necessary, compel the trustees to conform to it. What has been said with respect to question 1 is dispositive of, and requires a negative answer to, question 2.

To both questions in the reservation we answer, "No."

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.

---

[1] The second quoted paragraph, although widely different in wording, is in substance virtually identical to subdivision (b) of § 1 of No. 753 of the Public Acts of 1967 (General Statutes § 45-100a [b]), an Act which authorizes the incorporation by reference in trust instruments of certain commonly used powers.