## CHASE MANHATTAN BANK,[1] TRUSTEE, ET AL. *v.* COMMISSIONER OF REVENUE SERVICES

Superior Court            File No. CV960560970

Tax Session

---

[1] On April 22, 1997, the court, *Maloney, J.*, granted permission to substitute Chase Manhattan Bank for the original trustee, Chemical Bank. Chemical Bank's name was changed because of a merger with Chase Manhattan Bank.

Memorandum filed December 5, 1997

*Howard, Kohn, Sprague & Fitzgerald,* for the plaintiffs.

*Richard K. Greenberg,* assistant attorney general, with whom was *Richard Blumenthal,* attorney general, for the defendant.

## I

## INTRODUCTION

MCWEENY, J. This case presents a number of challenges to the constitutionality of the state of Connecticut's income tax as to five specific trusts. The plaintiffs are the trustees[2] of five separate trusts which, in 1993, paid Connecticut income tax as "resident trusts" pursuant to General Statutes § 12-701 (a) (4). The plaintiffs filed timely requests for refunds. These requests were denied by the defendant, the commissioner of revenue services. The plaintiffs are aggrieved by such decision and this appeal is authorized under General Statutes § 12-730.[3] For the reasons to be subsequently set forth, the court finds the issues in favor of the defendant.

[2] The trustees sue as representatives of the trusts. General Statutes § 52-106.

[3] In appeals pursuant to General Statutes § 12-730, the trial court is not limited to the procedure and standard of review under the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq. General Statutes § 4-186 (a). The process involves a de novo review by the trial court hearing evidence and exercising its equitable authority. General Statutes § 12-730; see also *Gallacher* v. *Commissioner of Revenue Services,* 221 Conn. 166, 176, 602 A.2d 996 (1992).

The parties have stipulated to the facts and submitted uncontroverted affidavits in support of their cross motions for summary judgment.

The trusts present somewhat different factual scenarios, but all of the plaintiffs rely on the same fundamental claims. The plaintiffs assert that the trusts, trustees, assets and beneficiaries have such limited contact with Connecticut that requiring the trusts to pay the Connecticut income tax denies them due process of law.[4] The plaintiffs also assert a commerce clause claim under article one, § 8, cl. 3, of the United States constitution. The commerce clause claim asserts that the Connecticut income tax on resident trusts seriously, unreasonably and unduly burdens interstate commerce.

In order to determine the constitutionality of Connecticut's taxing the income of the resident trusts, the facts must be reviewed as to each trust.

## II

### THE PARRY TRUST

This testamentary trust was established in Connecticut by the will of Sidney L. Parry upon his death in 1968. Parry, at the time of his death, was a resident and domiciliary of Connecticut. Parry's widow would take

[4] The plaintiffs claim due process of law violations under both the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. In a footnote, the plaintiffs assert that the due process analysis under the federal constitution applies to the state due process analysis. "Although we often look to United States Supreme Court precedent when construing related provisions in our state constitution, we may determine that the protections afforded to the citizens of this state by our constitution go beyond those provided by the federal constitution, as that document has been interpreted by the United States Supreme Court." (Internal quotation marks omitted.) *State* v. *Linares*, 232 Conn. 345, 378–79, 655 A.2d 737 (1995). Because the plaintiffs did not present a separate analysis for the state constitutional claim, the court will not review the plaintiffs' due process claim under the state constitution. *State* v. *Kiser*, 43 Conn. App. 339, 354, 683 A.2d 1021 (1996).

a share of the trust as life tenant; upon her death her daughter will become the life beneficiary and her grandchildren the remaindermen.

A predecessor of Chase Manhattan Bank and two individuals were appointed trustees of the trust. None of the beneficiaries of the trust is, or has been since its inception, a resident or domiciliary of Connecticut.

None of the trust assets is located in Connecticut, nor has any been since 1980. Also, since at least 1980, no aspect of the trust administration was located in Connecticut. No income of the trust was in any way connected with or derived from sources within Connecticut in 1993. For the 1993 tax year, the Parry trust did not pay income tax to any state other than Connecticut.

Parry's will was probated in the Probate Court for the district of Westport in 1968. The will excused the trustees from rendering periodic accounts, and none has been filed by the trustees. See General Statutes § 45a-177. The trustees must file a final accounting with the Probate Court, as a final accounting cannot be waived under Connecticut law. General Statutes § 45a-175.

The Parry trust has the least contact with Connecticut of any of the five plaintiff trusts. The Connecticut connections consist of the domicile and residence of the settlor, the probating of his will in the Connecticut Probate Court, jurisdiction of the Probate Court over accounts of trustees as fiduciaries pursuant to § 45a-175 and the requirement for a final accounting by the trustees pursuant to §§ 45a-175 and 45a-177.

### III

### THE DALLETT TRUST

The Dallett Trust is a testamentary trust established under the will of John Dallett who was a resident and

domiciliary of Connecticut at the time of his death in 1975. The will was probated in the Probate Court for the district of Westport.

The will placed a portion of the estate in a trust which paid its income to Dallett's son for his life. Upon the death of the son, the income would go to the grandchildren until the youngest reached the age of twenty-three. The only grandchild is currently over the age of twenty-three.

Similar to the Parry trust, no assets or income of the Dallett trust are connected to Connecticut, the trustees and beneficiaries are not residents or domiciliaries of Connecticut, and no aspect of the trust administration was located in Connecticut. The Dallett trust did not pay income tax to any state other than Connecticut in 1993.

The Dallett trustees have filed six periodic accountings with the Probate Court. Thus, the jurisdiction of the Probate Court has, in fact, been continuous.

## IV

## THE STEWART TRUST

This is a testamentary trust established under the will of Elvira R. Evens, who died in 1974, a resident and domiciliary of Connecticut. Her will was probated in the Probate Court for the district of New Canaan.

The will established a trust to pay income to her daughter, Grace Evans Stewart, for life. In 1995, Stewart died and the trust assets were distributed to the grandchildren, who had been named remaindermen. Stewart was a resident and domiciliary of Connecticut. One of the two remaindermen was a Connecticut resident.

As is the case with all the testamentary trusts at issue here, the trustees were neither Connecticut residents

nor domiciliaries, no assets were located in Connecticut, no income was derived from sources in Connecticut, no trust administration occurred in Connecticut, and in 1993, no income taxes were paid to any state other than Connecticut.

The will exempted the trustees from filing periodic accounts and none were filed. A final accounting, however, was filed in 1995 as required by General Statutes §§ 45a-175, 45a-177 and 45a-179. The Probate Court reviewed the final accounting and issued its allowance of the final account on January 3, 1996.

V

THE WORCESTER TRUST

This is the fourth of the testamentary trusts. It was created under the will of James N. Worcester, who died in 1936, a Connecticut resident domiciliary. The will was probated in the Probate Court for the district of New Canaan. The residuary estate was left in this trust, which paid the income to Worcester's widow until her death in 1983. Subsequently, the income was paid to her only son, a resident and domiciliary of Connecticut. Upon his death, the trust will terminate at which time the trust assets will be distributed as the son may appoint or, in default of such appointment, to the son's living issue. Only one of the son's living children is a Connecticut resident and domiciliary.

The trustee is not a Connecticut resident or domiciliary. None of the trust assets or income are connected to Connecticut, though from October 1, 1973, to April 30, 1980, the trust held shares and a proprietary lease for a cooperative apartment in Greenwich. The trust is administered in New York. As with the other testamentary trusts, the Worcester trust did not pay income tax to any state other than Connecticut in 1993.

The trustees have filed forty interim accounts, which have been reviewed and approved by the Probate Court.

## VI

## THE ADOLFSSON TRUST

This is an inter vivos trust established in 1955 by Charles Anderson Dana, a Connecticut resident and domiciliary who died in 1979.

The trust provides that its income will be paid to his daughter once she attains the age of twenty-eight until her death or her attainment of the age of forty-eight. The daughter presently is forty-two years of age and has children. The beneficiary and contingent beneficiaries are Connecticut residents.

The trustee is not a Connecticut resident or domiciliary. The trust assets and income are not located in or connected to Connecticut. The trust is administered in New York.

All of these trusts share certain characteristics. All were created in Connecticut by Connecticut residents. All of the trusts have been probated in Connecticut. All of the trusts are subject to final accounting requirements of Connecticut law. None of the trusts has Connecticut trustees, trust administration, trust assets in Connecticut or trust income connected with or derived from sources in Connecticut.

The Parry trust has no additional contacts with Connecticut.

The Dallett trust has the additional contacts of interim periodic accounts which were reviewed and allowed by the Probate Court.

The Stewart trust has the additional contacts of beneficiaries being residents of Connecticut.

The Worcester trust has additional contacts because both beneficiaries are present in Connecticut and the periodic accounts have been filed.

The Adolfsson trust is the only inter vivos trust. The trust settlor and beneficiary were Connecticut residents.

Connecticut's income tax imposes a tax upon the undistributed income and realized gains of resident trusts. A resident trust is any testamentary trust created by a decedent who was domiciled in Connecticut at the time of death and any inter vivos trust created by a settlor who was domiciled in Connecticut at the time the trust was funded and became irrevocable. General Statutes § 12-701 (a) (4).[5] The trusts were all resident trusts for the purposes of § 12-701 (a) (4).

The present case raises issues of first impression in this jurisdiction; though the court is informed by decisions on point in other jurisdictions. See *District of Columbia* v. *Chase Manhattan Bank*, 689 A.2d 539 (D.C. App. 1997); *Augusta* v. *Kimball*, 91 Me. 605, 40 A. 666 (1898); *Pennoyer* v. *Taxation Division Director*, 5 N.J. Tax 386 (1983); *Taylor* v. *State Tax Commission*, 85 App. Div. 2d 821, 445 N.Y.S.2d 648 (1981); *First National Bank of Boston* v. *Commissioner of Taxes*, 111 Vt. 281, 16 A.2d 184 (1940); and *Bayfield County* v. *Pishon*, 162 Wis. 466, 156 N.W. 463 (1916); for cases

---

[5] General Statutes § 12-701 (a) provides in pertinent part: "(4) 'Resident trust or estate' means (A) the estate of a decedent who at the time of his death was a resident of this state . . . (D) a trust, or a portion of a trust, consisting of the property of (i) a person who was a resident of this state at the time the property was transferred to the trust if the trust was then irrevocable, (ii) a person who, if the trust was revocable at the time the property was transferred to the trust, and has not subsequently become irrevocable, was a resident of this state at the time the property was transferred to the trust or (iii) a person who, if the trust was revocable when the property was transferred to the trust but the trust has subsequently become irrevocable, was a resident of this state at the time the trust became irrevocable . . . ."

involving taxation of testamentary trusts. See *McCul-loch* v. *Franchise Tax Board*, 61 Cal. 2d 186, 390 P.2d 412, 37 Cal. Rptr. 636, appeal dismissed, 379 U.S. 133, 85 S. Ct. 274, 13 L. Ed. 2d 333 (1964); *Blue* v. *Michigan Dept. of Treasury*, 185 Mich. App. 406, 462 N.W.2d 762 (1990); *Potter* v. *Taxation Division Director*, 5 N.J. Tax 399 (1983); and *Mercantile-Safe Deposit & Trust Co.* v. *Murphy*, 19 App. Div. 2d 765, 242 N.Y.S.2d 26 (1963), aff'd, 15 N.Y.2d 579, 203 N.E.2d 490, 255 N.Y.S.2d 96 (1964); for cases involving taxation of inter vivos trusts.

The leading case on the constitutional limits of a state's ability to tax is *Quill Corp.* v. *North Dakota*, 504 U.S. 298, 326, 112 S. Ct. 1904, 119 L. Ed. 2d 91 (1992). *Quill* involved the imposition of the North Dakota use tax on an out-of-state mail order house with no outlets or sales representatives in North Dakota. The tax required the mail order company to collect and to pay a use tax on goods purchased by consumers for use in North Dakota.

The constitutional challenges to the tax, as in the present case, were under the due process and commerce clauses of the federal constitution. The due process nexus requirement concentrates on fundamental fairness, i.e., "whether an individual's connections with a State are substantial enough to legitimate the State's exercise of power over him." Id., 312. "In contrast, the Commerce Clause and its nexus requirement are informed . . . by structural concerns about the effects of state regulation on the national economy." Id. Thus, "the Due Process Clause and the Commerce Clause are analytically distinct." Id., 305.

## VII

## DUE PROCESS CLAIM

The court first turns to the plaintiffs' due process challenge to the income tax on testamentary trusts in

Connecticut. The plaintiffs' due process claim is, in essence, a challenge to the fairness of Connecticut taxing the trust income in view of the limited connection with the trusts. In regard to the testamentary trusts; the trustees, trust assets, beneficiaries and trust administration are all located outside of Connecticut. The Connecticut connections are the creation of the trust in Connecticut and the Probate Court supervision of the trusts.

In *Quill*, the United States Supreme Court conducted its due process analysis by recognizing that: "Our due process jurisprudence has evolved substantially the 25 years since [*National Bellas Hess* v. *Dept. of Revenue*, 386 U.S. 753, 87 S. Ct. 1389, 18 L. Ed. 2d 505 (1967)], particularly in the area of judicial jurisdiction. Building on the seminal case of *International Shoe Co.* v. *Washington*, 326 U.S. 310 [66 S. Ct. 154, 90 L. Ed. 95] (1945), we have framed the relevant inquiry as whether a defendant had minimum contacts with the jurisdiction 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' Id., at 316 (quoting *Milliken* v. *Meyer*, 311 U.S. 457, 463 [61 S. Ct. 339, 85 L. Ed. 279 (1940)]). In that spirit, we have abandoned more formalistic tests that focused on a defendant's 'presence' within a State in favor of a more flexible inquiry into whether a defendant's contacts with the forum made it reasonable, in the context of our federal system of Government, to require it to defend the suit in that State. In *Shaffer* v. *Heitner*, 433 U.S. 186, 212 [97 S. Ct. 2569, 53 L. Ed. 2d 683] (1977), the Court extended the flexible approach that *International Shoe* had prescribed for purposes of in personam jurisdiction to in rem jurisdiction, concluding that 'all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny.' " *Quill Corp.* v. *North Dakota*, supra, 504 U.S. 307. The court proceeded to conclude

and to hold: "Thus, to the extent that our decisions have indicated that the Due Process Clause requires physical presence in a State for the imposition of duty to collect a use tax, we overrule those holdings as superseded by developments in the law of due process. In this case, there is no question that Quill has purposefully directed its activities at North Dakota residents, that the magnitude of those contacts is more than sufficient for due process purposes, and that the use tax is related to the benefits Quill receives from access to the State. . . . The Due Process Clause does not bar enforcement of that State's use tax against Quill." Id., 308.

Following the analysis of *Quill*, the District of Columbia Court of Appeals rejected a due process clause challenge to an income tax on a testamentary trust under facts which are very close to those involving the four testamentary trusts in the present case. *District of Columbia* v. *Chase Manhattan Bank*, supra, 689 A.2d 539. *District of Columbia* held taxable the undistributed income of a testamentary trust created by the will of a District resident even though the trustee, trust assets, trust administration and beneficiaries of the trust at issue were located outside the District during the pertinent tax years. Id., 543. The trust had been created by the will of a District of Columbia resident. The trustees filed annual accountings and litigation of claims by individuals seeking beneficiary status was prosecuted in the District of Columbia courts.

The *District of Columbia* court noted *Quill's* abandonment of formalistic tests focusing on the taxpayer's presence within a state "for a more flexible inquiry into whether a defendant's contacts with the forum made it reasonable for the state to exercise jurisdiction." (Internal quotation marks omitted.) Id., 542. The court in *District of Columbia* found that: "A testamentary trust of a District resident, which has been probated in the courts of the District of Columbia, has a relationship

to the District distinct from the relationship, if any, between the District and the trustee or trust assets." Id., 544.

This finding is supported by Professor Bogert in his treatise on trusts: "If a court of the domiciliary state has already assumed jurisdiction, the courts of another state with jurisdiction based upon the situs of property or upon the trustee's domicile generally will decline to entertain a proceeding relating to the construction, validity or administration of the trust." G. Bogert, Trusts (6th Ed. 1987) § 177, p. 686; see also 2 Restatement (Second), Conflict of Laws § 267, comment (d), pp. 136–37 (1971).

In reaching this conclusion, the court noted that *Quill* equates the state's power to tax with its power to exercise jurisdiction, and concluded that the District's ties to the trust itself justify both the District's continuing jurisdiction over the trust and the District's taxation of the entire net income of the trust (irrespective in both instances of the location of the trustee, trust assets, or trust beneficiaries).

The court in *District of Columbia* analogized the resident trust to a domestic corporation. "A testamentary trust, like a corporation, is a creature of the laws of the state where it is created and owes its very existence to those laws." *District of Columbia* v. *Chase Manhattan Bank*, supra, 689 A.2d 544. The consequence of such connection for corporations is the taxing authority of its state of origin. " '[A corporation] must dwell in the place of its creation, and cannot migrate to another sovereignty. The fact that its property and business were entirely in another state did not make it any less subject to taxation in the state of its domicile.' " Id., 544–45, quoting *Cream of Wheat Co.* v. *Grand Forks*, 253 U.S. 325, 328, 40 S. Ct. 558, 64 L. Ed. 931 (1920);

see also *Commercial Credit Consumer Services, Inc.* v. *Norberg*, 518 A.2d 1336, 1337–38 (R.I. 1986).

A further analogy was drawn to the power of a state to tax the entire income of a resident, regardless of its source. " 'Domicil[e] itself affords a basis for such taxation. Enjoyment of the privileges of residence in the state and the attendant right to invoke the protection of its laws are inseparable from responsibility for sharing the costs of government.' " *District of Columbia* v. *Chase Manhattan Bank*, supra, 689 A.2d 542, quoting *New York ex rel. Cohn* v. *Graves*, 300 U.S. 308, 313, 57 S. Ct. 466, 81 L. Ed. 666 (1937); see also *Oklahoma Tax Commission* v. *Chickasaw Nation*, 515 U.S. 450, 115 S. Ct. 2214, 132 L. Ed. 2d 400 (1995).

The plaintiffs criticize the analysis in *District of Columbia*. The plaintiffs analogize the testamentary trusts to relationships at law rather than to legal entities. Legal relationships such as marriage do not give the state which created the relationship continuing jurisdiction in the absence of residence of at least one of the parties. See General Statutes § 46b-44; see also 1 H. Clark, Jr., The Law of Domestic Relations in the United States (2d Ed. 1987) § 13.2, pp. 703–705.

Trusts, unlike other legal relationships, have been recognized as a separate entity for tax purposes. *Anderson* v. *Wilson*, 289 U.S. 20, 27, 53 S. Ct. 417, 77 L. Ed. 1005 (1933). "It may well be that sound fiscal policy would be promoted by a tax upon trust intangibles levied only by the state that is the seat of a testamentary trust." *Greenough* v. *Tax Assessors*, 331 U.S. 486, 490, 67 S. Ct. 1400, 91 L. Ed. 1621 (1947). This is essentially the policy adopted in *District of Columbia*, regarding the tax on the income of a testamentary trust. It is also critical in analyzing these trusts to consider the clear legislative determination that resident trusts are entities for income tax purposes. General Statutes § 12-700 et

seq. Trusts often do dictate legal relationships; but, certainly in the tax field, trusts constitute legal entities.

The plaintiffs also criticize what they describe as a "faulty syllogism" in *District of Columbia*: if the courts of the District have judicial jurisdiction over a testamentary trust, then the District should also have taxing jurisdiction over the trust. The plaintiffs correctly point out that due process still requires that, for taxing jurisdiction, the question is whether "the state has given anything for which it can ask return." *Wisconsin* v. *J. C. Penney Co.*, 311 U.S. 435, 444, 61 S. Ct. 246, 85 L. Ed. 267 (1940). In fact, the court in *Quill* concluded: "In this case, there is no question that Quill has purposefully directed its activities at North Dakota residents, that the magnitude of those contacts is more than sufficient for due process purposes, and that the use tax is related to the benefits Quill receives from access to the State." *Quill Corp.* v. *North Dakota*, supra, 504 U.S. 308.

In the context of the present case, the trusts must have received something from Connecticut for which the state can ask return. This is the crux of the due process analysis.

Connecticut, through its laws, allows the creation of testamentary trusts. The plaintiffs attribute the domicile of the settlor to mere historical interest or happenstance. Unquestionably, as to testamentary trusts, there is neither a common law nor a constitutional right to direct the distribution of property after death. "Rights of succession to the property of a deceased . . . are of statutory creation, and the dead hand rules succession only by sufferance. Nothing in the Federal Constitution forbids the legislature of a state to limit, condition, or even abolish the power of testamentary disposition over property within its jurisdiction." *Irving Trust Co.* v. *Day*, 314 U.S. 556, 562, 62 S. Ct. 398, 86 L. Ed. 452 (1942). "Since the right to transmit or receive

property upon the death of the owner is not an inherent right but purely a privilege granted by the State, it is obvious that that privilege may be abridged or coupled with conditions at the will of the State." *Blodgett* v. *Bridgeport City Trust Co.*, 115 Conn. 127, 142, 161 A. 83 (1932); see also General Statutes § 45a-250.

In creating these testamentary trusts, the settlors exercised and took advantage of a right or a privilege granted by Connecticut law. It is fair to say that the trusts owe their existence to Connecticut law. Like the individual domiciliary or Connecticut corporation, the resident trust may invoke the protection of Connecticut law and thus be responsible to share the costs of government.

The probating of the trusts in Connecticut is also a substantial contact. Once again, Connecticut law is relied upon for review, approval and protection of the trusts.

The "continuing jurisdiction" of the Probate Courts varied as to each trust, but in all events the trusts were protected by the requirement for a final accounting, statutory standards for trustees, and the availability of a forum in which to litigate issues relating to the trust. See *District of Columbia* v. *Chase Manhattan Bank*, supra, 689 A.2d 545.

The plaintiffs challenge the extent of Connecticut's jurisdiction when the beneficiaries are nonresidents. In the present case, the trustee of all five trusts is subject to Connecticut jurisdiction as was specifically determined in *Thomason* v. *Chemical Bank*, 234 Conn. 281, 661 A.2d 595 (1995). The absence of beneficiaries[6] as

---

[6] Connecticut recognizes that beneficiaries, in that they are represented by the trustees, may not be necessary parties to litigation relating to the trust. *Palmer* v. *Hartford National Bank & Trust Co.*, 160 Conn. 415, 425, 279 A.2d 726 (1971); see also General Statutes § 52-106 ("an executor, administrator, or trustee of an express trust may sue or be sued without joining the persons represented by him and beneficially interested in the action").

residents or persons with sufficient contact with Connecticut to satisfy due process limitations is cited by the plaintiffs as an impediment to Probate Court jurisdiction. See *Shaffer* v. *Heitner*, supra, 433 U.S. 186. Connecticut Probate Courts are empowered specifically to determine, upon the allowance of the interim and final accounts of trustees, the rights of the fiduciaries and the parties interested in the trusts. See General Statutes §§ 45a-175, 45a-176 and 45a-177. The Connecticut Supreme Court, in commenting on the powers of the Probate Court, noted: "The court also had the jurisdiction and the power to determine incidental questions so far as necessary to enable it to reach a correct conclusion in the administration of the estate." *Brownell* v. *Union & New Haven Trust Co.*, 143 Conn. 662, 665, 124 A.2d 901 (1956).

In that the trustee is amenable to service in Connecticut and the situs of the trust is in Connecticut, Connecticut law and courts provide an effective forum for the protection of the trust. Connecticut law has also recognized the appropriateness of its jurisdiction regarding resident trusts. *Morgan Guaranty Trust Co.* v. *Huntington*, 149 Conn. 331, 348, 179 A.2d 604 (1967). "Since these assets have become a part of the testator's residuary trust, and the will indicates no intention that this trust or any of its subdivisions should be administered under the law of any other jurisdiction, the usual rule applies, and the trust should be administered according to the law of the testator's domicil at the time of his death, that is, Connecticut."[7] Id.

In the present case, none of the beneficaries are parties.

The trustees' duties to beneficiaries are noted in *Gimbel* v. *Bernard I. & Alva B. Gimbel Foundation, Inc.*, 166 Conn. 21, 34, 347 A.2d 81 (1974), and *Connor* v. *Hart*, 157 Conn. 265, 277, 253 A.2d 9 (1968).

[7] The domicile of Chase Manhattan, a trustee of each of these trusts, is New York. Like Connecticut, New York bases its tax treatment of testamentary trusts on the domicile of the testator. N.Y. Tax Law § 605 (b) (3) B (McKinney).

The domicile of the testator trust settlor, the jurisdiction of the Probate Courts and the trust entity theory are sufficient connections to withstand a due process challenge to the imposition of the tax on the trust income.

## VIII

## COMMERCE CLAUSE CLAIM

The plaintiffs next claim that the tax on trust income unduly burdens interstate commerce in trust administration in violation of the commerce clause of the United States constitution.

In *Quill* the Supreme Court reiterated the test on this issue: "[W]e will sustain a tax against a Commerce Clause challenge so long as the 'tax [1] is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State.'" *Quill Corp.* v. *North Carolina*, supra, 504 U.S. 311, quoting *Complete Auto Transit, Inc.* v. *Brady*, 430 U.S. 274, 279, 97 S. Ct. 1076, 51 L. Ed. 2d 326 (1977).

The law has moved away from prohibiting direct taxation of interstate commerce to adopting an inquiry into the practical effect of the challenged tax.

The original income tax did not tax resident trusts, with the result that it reached only trusts administered by Connecticut trustees. Connecticut banks, fearing the loss of trust business, lobbied for the current law which focuses on the domicile of the testator rather than other contacts. Thus, the resident trusts will be subject to the income tax wherever they are administered. See Public Acts, Spec. Sess., May, 1992, No. 92-17, § 11.

The history of Connecticut's law illustrates its conformity to the requirement of the second and third part

of the *Complete Auto Transit, Inc.* analysis. "The second and third parts of that analysis, which require fair apportionment and nondiscrimination, prohibit taxes that pass an unfair share of the tax burden onto interstate commerce." *Quill Corp.* v. *North Dakota*, supra, 504 U.S. 313. What is being taxed is the income of the trust of any trust created by the will of a Connecticut resident. It is not the trustees who are being taxed. Rather, the tax falls equally on the trusts without regard to whether it is intrastate or interstate as to trust administration. It does not discriminate. As to fair apportionment, that result seems to follow from the Connecticut statute crediting out-of-state taxes. General Statutes § 12-704.[8]

The remaining elements of the *Complete Auto Transit, Inc.* test have been described in *Quill Corp.* v. *North Dakota*, supra, 504 U.S. 313: "The first and fourth prongs, which require a substantial nexus and a relationship between the tax and state-provided services, limit the reach of state taxing authority so as to ensure that state taxation does not unduly burden interstate commerce." Thus, the trusts could have the minimum contacts to meet the due process clause requirements, but lack the substantial nexus with the state required by the commerce clause.

The jurisdiction of Connecticut courts over testamentary trusts created by the wills of its residents is primary jurisdiction. 2 Restatement (Second), supra, § 267, pp. 133–39. Connecticut authorities describe this as the ordinary rule. See *Palmer* v. *Hartford National Bank & Trust Co.*, 160 Conn. 415, 279 A.2d 726 (1971).

The creation of the trust under Connecticut law, the primary jurisdiction of its courts, the absolute requirement of a final accounting, and the situs of the trust in

---

[8] The plaintiffs raise the spectre of double taxation which can invalidate a tax under a commerce clause challenge. There is, however, no evidence of double taxation of these trusts and there is a statutory scheme crediting

the state; see G. Bogert, supra, § 177, p. 686; constitute not only sufficient minimal contacts, but a substantial nexus to Connecticut.

The income tax is a general revenue tax. The relationship between the tax and state provided service is of a general nature. Testamentary trusts exist neither as common law nor constitutional right. *Irving Trust Co.* v. *Day*, supra, 314 U.S. 562. They exist only as authorized by state law. The settlor having chosen Connecticut law, it is not improper to impose a general obligation tax on the entity which owes its existence to Connecticut law. See *Cream of Wheat Co.* v. *Grand Forks County*, supra, 253 U.S. 328 (recognizing right of state to tax income of domestic corporations earning their income in other states). The trust entity domicile in Connecticut may also constitute the basis of a tax on all income. *New York ex rel. Cohn* v. *Graves*, supra, 300 U.S. 313.

The court concludes that the commerce clause does not invalidate Connecticut tax on the testamentary trust income.

## IX

## INTER VIVOS TRUST

Connecticut taxes the Adolfsson trust as a resident inter vivos trust. General Statutes § 12-701 (a) (4). These types of trusts are taxed only on a pro rata basis dependent upon the ratio of Connecticut resident noncontingent beneficiaries to the total class of noncontingent beneficiaries. All the Adolfsson trust noncontingent beneficiaries are Connecticut residents.

The plaintiffs argue that the Connecticut resident "noncontingent beneficiary" was improperly taxed on

payments to other states. The four testamentary trusts were not taxed by any state other than Connecticut in 1993.

all the income of the trust which she received. The trust was taxed on the capital gains earned on the corpus of the trust. The trustee had no power to invade the trust, so the beneficiaries in Connecticut had no rights to the capital gain subject to this tax.

The beneficiaries' residence as the focus of analysis for taxing an inter vivos trust was approved in *McCulloch* v. *Franchise Tax Board*, supra, 61 Cal. 2d 194: "We find no reason in constitutional principles or in practical application of such principles why the tax founded upon the residence of the beneficiary should not be sustained." *McCulloch* notes the protection provided by state law for the eventual receipt of the trust corpus. Connecticut courts also have jurisdiction to entertain actions by trustees, settlors or beneficiaries of inter vivos trusts to require accounting of actions taken by trustees. General Statutes § 45a-175; see also *United States Trust Co.* v. *Bohart*, 197 Conn. 34, 495 A.2d 1034 (1985). Furthermore, a probate court has the authority, on its own motion or upon the application and complaint of an interested person, to remove a trustee for misconduct or neglect in the exercise of their duties. General Statutes § 45a-242.

The taxation of the Adolfsson trust is not constitutionally invalid due to the Connecticut residency of the noncontingent beneficiary and the protections afforded by Connecticut law.

## X

## CONCLUSION

The defendant's motion for summary judgment is granted. The plaintiffs' motion for summary judgment is denied. Judgment shall enter for the defendant.