H. Boone PORTER, III, Charlotte M. Porter and Michael T. Porter, Plaintiffs,

v.

Frank S. BERALL, Mark H. Neikrie, Suzanne Brown Walsh and Copp & Berall, L.L.P., Defendants.

No. 00–1028–CV–W–6.

United States District Court, W.D. Missouri, Western Division.

June 5, 2001.

---

Richmond M. Enochs, Wallace, Saunders, Austin, Brown & Enoch, Overland Park, KS, for defendants.

Gordon D. Gee, Seigfreid, Bingham, Levy, Selzer & Gee, Kansas City, MO, for plaintiffs.

## MEMORANDUM AND ORDER

SACHS, District Judge.

This legal malpractice case was brought against Connecticut lawyers by the trustees of a family trust registered in Missouri. It is contended (without dispute) that the late Reverend Porter, the father of the three trustees, and trustee Boone Porter III (a resident of Kansas with law offices in Missouri) sought assistance from defendants in September, 1996, to amend a 1990 trust instrument to assure, among other things, that any tax exposure in Connecticut would be eliminated or minimized. Two months before execution of the trust amendment in February, 1998, the Connecticut appellate court ruled that a trust's undistributed capital gains may constitutionally be taxable in Connecticut when any of the beneficiaries are Connecticut residents. *Chase Manhattan Bank v. Comm'r of Revenue Services*, 45 Conn. Supp. 368, 716 A.2d 950 (1997). The father, who was himself a beneficiary of a family trust initially established in 1960, and several of his children were residents of Connecticut.

Plaintiffs' basic contention is that defendants neglected to take into account, in estate planning, the recent decision of the Connecticut court, and that costly corrections of the plan were required in late 1999, after the death of the father. Plaintiffs seek over $200,000 in such alleged corrective costs, and also punitive damages for alleged reckless or willful misconduct and breach of fiduciary obligations in allegedly concealing information about the adverse decision until some time after the father's death.[1] Silence regarding any

---

1. Although not pertinent to this ruling, I note that I am somewhat baffled by the signifi-

known tax problem in Connecticut was allegedly attributable, at least in part, to a self-serving effort to retain legal business.

■ Defendants move to dismiss the action for want of personal jurisdiction over them. They contend that certain Missouri aspects of the litigation, such as payment of corrective expenses from funds deposited here, and some activities in Missouri after the death of the father, are insufficient to confer personal jurisdiction, as a matter of constitutional law. After an evidentiary hearing and briefing, I have become satisfied that Eighth Circuit law, governed by rulings of the Supreme Court, requires dismissal.

In seeking to avoid undue complications I assume that both plaintiffs Porter and their father were clients of defendants from 1996 onward. I also assume that the Missouri registration of the trust gives adequate standing to litigate, in the same manner as if the three trustees were Missouri residents. From a reasonable reading of the pleadings I conclude that the principle claim asserted is of professional malpractice in Connecticut prior to execution of the trust amendment in February, 1998, but that there is a subordinate claim under Connecticut law of a continuing fiduciary duty to disclose any malpractice and any tax problems known to counsel. I agree with plaintiffs that any injury asserted relates to trust funds in Missouri that were used to rectify the structuring of the trust.

■ Although all cases have not reached the same conclusion, because of some variance in facts and approach, the clearly compelling body of law regarding lawyer malpractice confines personal jurisdiction to the situs of the acts and omissions complained of. A federal judge in Maryland has aptly asserted that "case law overflows on the point that providing out-of-state legal representation is not enough to subject an out-of-state lawyer or law firm to the personal jurisdiction of the state in which a client resides." *Cape v. von Maur,* 932 F.Supp. 124, 128 (D.Md. 1996) (citing, among other cases, the Eighth Circuit decision in *Austad Co. v. Pennie & Edmonds,* 823 F.2d 223 (8th Cir.1987)). One of the more recent appellate decisions so ruling is *Sawtelle v. Farrell,* 70 F.3d 1381 (1st Cir.1995), which rejects the controlling effect of what is probably plaintiffs' strongest argument, that the injury from any malpractice predictably occurred in Missouri.[2] See also *FDIC v. Malmo,* 939 F.2d 535, 537 (8th Cir.1991), rejecting an "effects of misconduct" argument. The Eighth Circuit ruling in *Malmo* and the *Sawtelle* case were quite recently cited for the insufficiency of the locus-of-harm test in a ruling denying personal jurisdiction in Pennsylvania litigation against an accountant for professional malpractice in New York. *Poole v. Sasson,* 122 F.Supp.2d 556, 559 (E.D.Pa. 2000).

The Eighth Circuit *Austad* case, which appears to be the leading case (along with *Malmo* ) that is dispositive of the personal jurisdiction question here, was cited and explained by another Eighth Circuit opinion, *Dakota Industries, Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1390–1 (8th Cir.1991). Missouri billing (and thus

cance of the constitutional ruling. One would suppose that defendants had notice of the purported coverage of the Connecticut statute some considerable time before that decision.

**2.** A Colorado state court case is cited for relying on the place of injury to establish

jurisdiction. 70 F.3d at 1392. No federal case has been cited or found that adopts this theory in a professional service-supplying context. Such a theory would confer jurisdiction in practically all the cases where jurisdiction was rejected.

harm) was said not to be controlling in litigation claiming "mere untargeted negligence" as distinguished from "intentional, and allegedly tortious, actions" that are "aimed expressly at the forum state." *Austad* thus exempts a nonresident service provider from jurisdiction where there is no "intentional tortious wrongdoing" so directed.

Plaintiffs candidly recognize that *Austad* and *Malmo* present them with problems, but attempt to distinguish them, and all similar attorney malpractice cases, by saying they deal with "a litigation matter" being conducted in another state. None of the cases, however, makes such a distinction, and no rationale for the distinction is offered or occurs to the court. Without trying to exhaust the subject, *Poole* seems to deal with accountant services similar to estate planning services and the court used out-of-state litigation cases for controlling principles.

Plaintiffs rely most heavily on a recent Fifth Circuit decision. *Streber v. Hunter*, 221 F.3d 701 (5th Cir.2000). In that case, however, "much of (counsel's) alleged malpractice occurred during the 1993 mediation, which took place in Houston". 221 F.3d at 718. Plaintiffs do cite an alternate theory expressed in a footnote, that the allegations also relate to "a breach of fiduciary duty based on a failure to disclose material information" in counsel's communications with the forum state. This was described as "purposeful direction of material omissions to the forum state." The language is drawn from another Fifth Circuit case, *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir.1999). In *Wien* the failure to disclose material information was an intrinsic part of communications with Texans making fraudulent misrepresentations and promises. The court distinguished *Malmo* and *Austad*, asserting that in those cases "communications with the forum did not actually give rise to a cause of action."

In the present case, nothing has been presented that would link a failure to act or to make disclosures with any particular communication to Missouri that gives rise to plaintiffs' claim. *Non* communication seems to be one of the pertinent contentions. The affirmative misconduct alleged was in drafting documents that were harmful or inept, and the claims about silence and failure to correct appear to be Connecticut-based. *Wein* and *Streber* thus offer little or no support to the jurisdictional claim here.

The most specific claim of concealment, according to the briefing, appears to be some evasiveness in a telephone conversation with plaintiff Porter some months after his father's death, at a time when damaging malpractice is alleged to have been completed. Stretching the claim beyond what may be permissible, this would seem to relate to punitive damages only.

Defendants are thus clearly entitled to a dismissal of the claims, insofar as specific personal jurisdiction is dependent on conduct allegedly constituting professional malpractice but essentially confined to Connecticut.

■ An alternate claim of general personal jurisdiction would lie, however, on a showing of persistent substantial activities in or directed toward the forum, even if not intrinsically part of the cause of action. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). To the extent there were occasional communications and agreements relating to the Porter trusts extending for a period of years prior to suit being brought, and at least one visit by an agent of defendants after the death of the Reverend Porter, these connections fall substantially short of what may be

deemed a submission to jurisdiction by frequent and significant dealings. The sort of legal activities that will justify a finding of general personal jurisdiction is illustrated by *Trinity Industries, Inc. v. Myers and Associates, Ltd.*, 41 F.3d 229 (5th Cir.1995). Plaintiffs do not brief the applicability of *Helicopteros*, and merely assume that the Missouri long-arm statute can be literally applied in a sweeping manner absent satisfaction of the due process requirements of that case.[3]

Based on the foregoing, defendants' motion to dismiss for want of personal jurisdiction will be sustained. A transfer of the case to federal court in Connecticut would seem appropriate to resolution of the merits. In briefing, however, plaintiffs express concerns about the effect of their appearing in Connecticut. Such concerns may be ill founded, but plaintiffs are entitled to make their own appraisal. In order to preserve that opportunity, the motion to dismiss (ECF doc. 10) will be sustained and the Clerk is directed to enter judgment in favor of defendants, without prejudice, 30 days after filing of this order, unless, before expiration of that period, plaintiffs file a motion to transfer the case to Connecticut.[4] Plaintiffs' motion for a preliminary injunction (ECF doc. 2) is denied as moot and because the court lacks jurisdiction over defendants. SO ORDERED.

---

**3.** Although disposition of this case should not turn on unrelated public policy considerations, it seems that much of the conduct relied on to tie the defendants to Missouri occurred after the death of the Reverend Porter, in an attempt to correct and restructure the estate plan that plaintiffs claim was defective. It would be unfortunate if the courts would use such conduct to hang unwanted jurisdictional effects on parties seeking to settle or alleviate the problem giving rise to litigation. Nonresident participation by the original parties in such an enterprise should not be inhibited by fear of submitting to jurisdiction.

**4.** This order will be stayed for an additional 30 days if, for example, there are settlement negotiations that cannot be quickly completed.